EUGENE A. WALLING, trustee in bankruptcy, *vs.* HENRY
O. CUSHMAN & others, administrators.

Suffolk.    December 1, 1920. — March 4, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Bills and Notes,* Indorser.   *Conflict of Laws.   Practice, Civil,* Report.   *Estoppel.*

Upon a report by a judge of the Superior Court of an action by the trustee in bank-
ruptcy of a bank in the State of Michigan against a married woman as an
indorser upon three negotiable promissory notes made by a corporation, it
appeared that the notes were dated and were made payable in the State of Colo-
rado and were valid by the law of that State. From facts agreed to by the par-
ties, it appeared that the first of the notes was issued pursuant to a resolution of
the maker's board of directors adopted at a meeting held in the State of Illinois
authorizing the issue of notes, to be indorsed by several named persons including
the defendant and then to be delivered to its treasurer, who, "in conjunction
with" one who was acting as the corporation's financial agent, should use it to
pay or refund "debts for which the company is obligated," the resolution con-
taining no specification of the names or addresses of the creditors; that it and two
other notes were then executed in Illinois, where they were indorsed by the de-
fendant and others for accommodation, that they were discounted with the bank
in Michigan to take up other obligations of the corporation held by the bank;
that the other two notes in suit were executed and indorsed over two months later
and were presented by the corporation's financial agent to the bank in Michigan,
which discounted them and thereby the second and third notes previously dis-
counted by the same bank for the corporation were taken up. The defendant
offered to show that, when the notes were indorsed and discounted, the defend-
ant was domiciled in the State of Michigan and that, by the law of that State,
the defendant was not liable as indorser upon the notes and was not estopped
to set up the invalidity of her indorsement. The evidence was excluded and a
verdict was ordered for the plaintiff.   *Held,* that

(1) At common law, every indorsement upon a negotiable instrument is
presumed to have been made at the place where the instrument is dated;

(2) It did not appear from the record that the obligation of the defendant
first became complete by delivery of the notes in Michigan;

(3) On the record, the domicil of the defendant was immaterial;

(4) On the record, it could not be inferred by this court, in order to overcome
the legal presumption that the indorsement was made where the notes were
dated, that the defendant indorsed the notes with a view to having them de-
livered in Michigan, knowing that she would not there be bound by her indorse-
ment; nor could it be assumed that the bank knew that the defendant's
indorsement was that of a married woman, domiciled in Michigan, and that de-
livery of the notes was accepted with knowledge that the indorsement legally
was worthless;

(5) The defendant was estopped from setting up in defence that her indorse-
ment was made in Michigan.

CONTRACT by the trustee in bankruptcy of Maynard A., Floyd H. and James W. Losee, co-partners under the firm name "Bank of Trenton," originally against Matilda M. Chesbrough and, after her death intestate on March 11, 1915, against the administrators of her estate, the declaration as amended being in six counts. The first three counts were upon negotiable promissory notes, each of the par value of $5,000, the first dated March 25, and the second and third dated June 8, 1912, and, in other particulars, described in the opinion. The fourth and fifth counts were upon notes which were taken up by the plaintiff's bankrupts when they discounted the notes described in the second and third counts. The sixth count was for money had and received "to the plaintiff's use." Writ dated September 3, 1914.

In the Superior Court the action was tried before *Hall*, J., upon the notes, a Colorado statute described in the declaration and an agreed statement of facts, from which it appeared that the note described in the first count of the declaration, with the two described in the fourth and fifth counts, were authorized at a meeting of the board of directors of the Boston Colorado Power and Water Company in Chicago in the State of Illinois, on March 23, 1912, and were then indorsed by Mrs. Chesbrough and others. The resolution authorizing the issue stated that the notes were to be delivered "to the treasurer, who, with the advice of and in conjunction with Mr. C. H. Lord, is to discount said notes for the purpose of paying or refunding debts for which the company is obligated, and for caring for the company's needs until the underwriting . . . [then planned] . . . is effectuated. Said notes to be endorsed by Richard Irvin, Fremont B. Chesbrough, J. Wilbur Kay, Frank D. Patterson and M. M. Chesbrough." C. H. Lord, referred to in said resolution, was then acting and, since the organization of Boston Colorado Power and Water Company, had acted as its financial agent. He also had acted as financial agent of Boston Colorado Power Company since shortly after its organization. He was, when the resolution was passed, assisting in negotiating the bonds of Boston Colorado Power and Water Company and in arranging to finance the company and in raising money for its needs.

On March 26, 1912, Lord presented the notes described in the fourth and fifth counts of the declaration to the Bank of Trenton,

who discounted them and applied their proceeds to taking up other obligations of the maker of the note. On April 17, 1912, the note described in the first count was likewise used by Lord. The agreed statement further recites: "The notes described in the second and third counts of the plaintiff's declaration were signed and indorsed by the Boston Colorado Power and Water Company, and were presented by said Lord for indorsement to the several indorsers specified in the resolution of March 23, 1912, and the said Lord obtained the indorsements which appear on said notes from each of the parties whose name so appears. The said Lord, after obtaining these indorsements as aforesaid, on June 8, 1912, presented said two notes at said Bank of Trenton for discount, and the said notes were discounted by said bank, and the proceeds used to pay and take up the two above mentioned notes dated March 23, 1912, and described in counts 4 and 5 of the plaintiff's declaration."

Other material facts and the defendants' offer of proof are described in the opinion. The plaintiff relied only upon the three notes described in the first three counts of the declaration. The judge ordered a verdict for the plaintiff in the sum of $22,000.07, and reported the action to this court for determination, judgment to be entered on the verdict if the ruling was right; otherwise, the action to be remanded to the Superior Court for further proceedings.

*G. P. Wardner*, for the defendants.

*Lee M. Friedman*, for the plaintiff.

DE COURCY, J. The three notes in suit were made by the Boston Colorado Power and Water Company, a Colorado corporation having a usual place of business in that State, and were payable to its order. They were dated at Denver, Colorado, and were made payable at a trust company in that city. One of the indorsers was Matilda M. Chesbrough, the defendant's intestate, who was a director of the company and wife of Fremont B. Chesbrough, its president. The notes were discounted by the Bank of Trenton, Michigan, a partnership of which the plaintiff is trustee in bankruptcy. It is agreed that at maturity the notes were presented for payment at the place indicated therein and were not paid; that they were duly protested, and that proper notice was given to each indorser. No issue was raised as to the bank having taken the notes for value without notice before

maturity. The plaintiff offered the Colorado statute with reference to contracts of a married woman, put the notes in evidence, and rested. The defendants "offered to prove that by the law of Michigan, Matilda M. Chesbrough was not liable on the notes in suit, and that by the law of Michigan she was not estopped to set up the invalidity of her indorsements on said notes." They further offered to prove that at the time "when said notes were indorsed and discounted, Matilda M. Chesbrough was domiciled in Michigan." The presiding judge ruled that that evidence was immaterial; ordered a verdict for the plaintiff, and reported the case, with the stipulation of counsel that, if the order for a verdict was correct, judgment should be entered thereon.

The maker of a note is ordinarily deemed to have bound himself in accordance with the laws of the place where it is payable, where his contract is to be performed. See 5 R. C. L. 964. *Cherry v. Sprague,* 187 Mass. 113. As the contract of the indorser is a new and separate one, its validity is determined, as a general rule, by the laws of the State where the contract of indorsement is made; that is, where it takes effect by delivery. *Lawrence v. Bassett,* 5 Allen, 140. *Akers v. Demond,* 103 Mass. 318. *Milliken v. Pratt,* 125 Mass. 374. This general rule, however, is not applicable when it appears from the special circumstances that the parties intended otherwise. And admittedly the presumption at common law is the same as that now formulated in the negotiable instrument law, G. L. c. 107, § 69, "Except where the contrary appears every endorsement is presumed to have been made at the place where the instrument is dated."

As already stated, these notes were dated at Denver, Colorado, and were payable there. It appears that the note described in the first count was made and indorsed in Illinois; but no one suggests that the parties had the law of that State in view as determining their legal liability. It does not appear where the other two notes were made and indorsed. Nor does it clearly appear that the obligation of the intestate first became complete by delivery of the notes in Michigan. Apparently the $50,000 of indorsed notes authorized by the corporation in March, 1912, were then delivered in Chicago to C. H. Lord, who assisted "in negotiating the bonds of Boston Colorado Power and Water Company and in arranging to finance the company and in raising money

for its needs." As financial agent of the corporation he received the notes with authority to discount them wherever he could, and may have advanced his own money, so far as appears. On this record the domicil of Mrs. Chesbrough was immaterial. *Milliken* v. *Pratt,* 125 Mass. 374, 377. We cannot infer, in order to overcome the legal presumption, that she indorsed the notes with a view to have them delivered in Michigan, knowing that she would not there be bound by her indorsement. Much less can we assume that the partners who carried on the Bank of Trenton, knew that "M. M. Chesbrough" was a married woman, domiciled in that State, and that they knowingly accepted delivery of a note with an indorsement that was legally worthless.

Apart from the presumption that the indorsement of the defendants' intestate was made in Colorado, it may well be held that they are estopped from setting up the claim that it was made in Michigan. In *Towne* v. *Rice,* 122 Mass. 67, where the note in suit was dated at Boston, the defendant claimed 'that it was in fact made in New York, and void under the usury laws of that State. It was said by Devens, J., "The defendant seeks, as against an innocent purchaser in Massachusetts before maturity and without notice, to falsify and contradict the note signed by him, by proving that, although dated at Boston, where it would be valid notwithstanding the amount of interest reserved, it was actually made in New York, for the purpose of then proving, by the statutes of New York, that it is void. Unless he can be admitted to show that it was thus made, he cannot avail himself of the defence which he desires to maintain. No case to which we have been referred, or which we have been able to find, goes so far as to permit such proof." In *Chemical National Bank of New York* v. *Kellogg,* 183 N. Y. 92, the defendant Amy H. Kellogg indorsed the note in question at her residence in New Jersey, for the benefit of her husband and there delivered it to him. The plaintiff, a banking corporation in New York, in good faith and without notice discounted the note, and used the proceeds to take up a prior note held by it. The defendant would be liable under the laws of New York, but not liable under the laws of New Jersey on the facts disclosed. It was said by the court: "The defendant could not make her coverture a trap to catch innocent persons. She could not deliberately give the appearance of

validity to her contract and then as against a *bona fide* holder plead that it was invalid. She knew that the note was dated and payable in New York, and that the presumption from those facts was that it was indorsed there. She also knew that if she delivered the note in this condition to her husband to enable him to negotiate it, any one who acted on such presumption, as he lawfully might in the absence of notice, would be injured if she should plead her coverture and that she actually indorsed it in New Jersey. It was, therefore, her duty, if she wished to act honestly toward others, to attach some notice to her indorsement, or give notice in some other way, so that innocent third parties might not be harmed by relying upon appearances which she had aided in creating. . . . Pleading her indorsement as a New Jersey contract under these circumstances would be an attempt to take advantage of her own wrong, which the law will not permit. . . . Commercial necessity requires that only slight evidence should be insisted upon to establish an estoppel *in pais* as to the validity of commercial paper. The only practicable rule is to make the face of the paper itself, when free from suspicion, sufficient evidence, in the absence of notice, against all who aided to put it into circulation in that condition, unless the note is void by the positive command of a statute, such as the act against usury. No other rule would work well, for it would be intolerable if every bank had to learn the true history of each piece of paper presented for discount before it could act in safety. . . . Independently of the statute which will be cited presently, the argument in favor of an equitable estoppel rests mainly on the presumption that a note dated and payable in New York was made and indorsed in that State." See also *Lennig* v. *Ralston*, 23 Penn. St. 137; *Quaker City National Bank* v. *Showacre*, 26 W. Va. 48; 2 L. R. A. (N. S.) 299 note.

This reasoning is equally applicable to the case at bar.

On the facts disclosed we are of opinion that the presiding judge rightly ordered a verdict for the plaintiff on either or both of the above grounds. In accordance with the report judgment must be entered on the verdict.

　　　　　　　　　　　　　　　　　　　　　*So ordered.*