COLIN F. BEATON & another[1] *vs.* LAND COURT & another.[2]

Suffolk.   January 6, 1975. — April 10, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & WILKINS, JJ.

*Equity Jurisdiction*, Foreclosure of mortgage.  *Land Court*, Fore-closure of mortgage.   *Soldiers' and Sailors' Civil Relief Act. Mortgage*, Of real estate: foreclosure.  *Constitutional Law*, Due process of law, Equal protection of laws.

St. 1943, c. 57, § 1, as amended through St. 1959, c. 105, by limiting the issues in a proceeding thereunder to a determination of rights under the Federal Soldiers' and Sailors' Civil Relief Act of 1940 and the existence of persons having such rights, and thereby precluding owners of real estate, not seeking to raise any such issues in such a proceeding, from attacking therein the validity of a foreclosure of a mortgage on their property did not deny them due process of law or equal protection of the laws.   [386-394]

PETITION for a writ of mandamus filed in the Supreme Judicial Court for the county of Suffolk on April 17, 1974.

The case was heard by *Braucher, J.,* on demurrers.

[1] The other petitioner is Eleanor M. Beaton.

[2] The other respondent is Quinoil Industries, Inc.

*Daniel H. Kelleher (Saul E. Lipnick* with him) for the petitioners.

*Blair L. Perry* for Quinoil Industries, Inc.

*Robert H. Quinn,* Attorney General, for the Land Court.

QUIRICO, J.    This is an appeal by the petitioners from a May 16, 1974, order of a single justice of this court sustaining demurrers to a "Petition for Writ of Mandamus."[3]    The appeal is utterly without merit.    We briefly review the facts and proceedings leading to this appeal.

According to the petition, the factual allegations of which are accepted as true when ruling on a demurrer, *Slaney* v. *Westwood Auto, Inc.* 366 Mass. 688, 690 (1975), the petitioners owned certain land in Bridgewater.    In 1966, they mortgaged this land to the respondent Quinoil Industries, Inc. (Quinoil).    The mortgage provided:    "This mortgage is upon the statutory condition . . . for any breach of which the mortgagee shall have the statutory power of sale."    On February 20, 1974, Quinoil filed in the Land Court a document entitled "Bill to Foreclose Mortgage."    Notice was then issued to the petitioners, certain specified other persons, and "to all other persons entitled to the benefit of the Soldiers' and Sailors' Civil Relief Act of 1940 as amended."    This notice advised:    "If you are entitled to the benefits of the Soldiers' and Sailors' Civil Relief Act of 1940 as amended and you object to such foreclosure

---

[3] This petition was filed on April 17, 1974.    Effective July 1, 1974, the writ of mandamus, along with many other writs, was abolished by our new rules of civil procedure, which govern proceedings before a single justice.    Mass. R. Civ. P. 1, 1A, 81 (b), 365 Mass. 730, 731, 841 (1974).    As the Reporters' Notes to Rule 81 (b), Mass. Ann. Laws, Rules of Civil and Appellate Procedure at 470 (1974), point out, however:    "Burial of these antiques . . . does not mean elimination of the relief they afforded.    It does mean that an application for such relief will henceforth be commenced like any other civil action under these rules, viz., by complaint and summons, with the former containing a prayer for the appropriate relief."

you or your attorney should file a written appearance and answer in said court at Boston on or before the eighth day of April 1974, or you may be forever barred from claiming that such foreclosure is invalid under said act."

On April 8, 1974, the petitioners presented their purported answer to the bill to foreclose to the deputy recorder of the Land Court. Without accepting the answer for filing, the recorder referred it to the judges of the Land Court (the Judges), whereupon the petitioners moved that their answer be accepted for filing. The Judges promptly denied this motion, solely on the ground of St. 1943, c. 57, as amended by St. 1945, c. 120, and St. 1959, c. 105. These statutes, in essence, establish a proceeding to satisfy the requirements of the Soldiers' and Sailors' Civil Relief Act of 1940 (the 1940 Relief Act), now 50 U. S. C. Appendix, § 501 et seq. (1970),[4] as amended. The statutes further provide that in such proceedings notice such as that sent to the petitioners must be issued to various concerned persons. By virtue of St. 1959, c. 105, § 2, "In proceedings under this section, no person who is not entitled to the benefit of the

---

[4] The Soldiers' and Sailors' Civil Relief Act of 1940 was enacted by Congress after the outbreak of World War II and at a time when the United States, although not then a belligerent, was engaged in a massive increase of its armed forces. Before World War II ended, over sixteen million men and women had served in the armed forces of this country during the war years. The 1940 Relief Act, adopted as a war emergency measure, was not repealed at the end of the war, and has continued in effect during all the thirty-five years to the present time. As a result every mortgage of real estate foreclosed in that period has necessitated the pre-foreclosure equity proceeding prescribed by St. 1943, c. 57, as amended, adding both to the time and cost of each foreclosure. Although statistics are not available to us, it seems safe to say that the number of foreclosures which affect property interests of persons in the armed forces is currently minimal. Nevertheless, so long as the 1940 Relief Act continues in effect, the Commonwealth is not at liberty to eliminate pre-foreclosure proceedings to ascertain whether interested parties are in, or have just been released from, the service.

Soldiers' and Sailors' Civil Relief Act of 1940 as amended, . . . whether named as a defendant in the bill or not shall be entitled to appear or be heard in such proceeding except on behalf of a person so entitled, or unless an affidavit by the claimant, or a certificate by counsel appearing for him, stating that he is in the service and thus entitled to the benefit of the act, is filed with the appearances. Such proceedings shall be limited to the issues of the existence of such persons and their rights, if any." After their motion was denied, the petitioners sought a writ of mandamus, naming the Judges and Quinoil as respondents, to compel the Judges to cause the answer to be accepted for filing. Both respondents demurred to the petition. The single justice, ruling that in view of the provisions of St. 1959, c. 105, § 2, it would be futile to order the acceptance of the petitioners' answer, sustained the demurrers.

The answer which the petitioners attempted to file in the Land Court does not assert that the petitioners or any other concerned parties are entitled to the protection of the 1940 Relief Act. Neither does the answer raise the issue of the. existence of any such persons or of their rights.[5] Plainly, therefore, at least as far as the statutes are concerned, the Judges acted properly in denying the motion to compel the recorder to accept the answer. Equally plainly, as far as the statutes are concerned, the single justice properly sustained the demurrers to the petition for a writ of mandamus.

---

[5] The answer which the petitioners attempted to file in the Land Court contained three matters: (a) a claim that St. 1959, c. 105, and the order of notice issued thereunder are unconstitutional; (b) a defense that a bill in equity to redeem and discharge the mortgage had been filed by the petitioners and was pending in the Plymouth Superior Court; and (c) a defense that there had been no breach of condition of the mortgage. The answer also purported to incorporate by reference all the multifarious claims raised in the bill in equity previously filed in the Plymouth Superior Court.

The petitioners, however, urge us to rule that St. 1959, c. 105, is unconstitutional as permitting a taking of property without due process of law. Their argument seems to be that the statute, by restricting the issues which may be raised in a proceeding under the statute solely to a determination of the existence of servicemen, and their rights under the 1940 Relief Act, denies a mortgagor the opportunity to appear and raise other defenses which might invalidate the foreclosure. Without previously citing, much less discussing, a single case bearing on the due process limitations on the taking of an individual's property in this or any other context, the petitioners state: "Given the contemplated entry of a final decree in the Land Court proceeding authorizing the sale of 'the Beatons' real estate, the violation of due process in refusing to accept the Answer of 'the Beatons' for filing is so clear as to render unnecessary extensive discussion of less grievous due process violations recently found in summary state pre-judgment attachment, replevin and garnishment statutes which involved only 'temporary takings' and which ultimately provided for defendant's appearance and answer. *Fuentes* v. *Shevin,* 407 U. S. 67 [1972]; *Sniadach* v. *Family Finance Corp. of Bay View,* 395 U. S. 337 [1969]. . . . Given the clear violation of due process, it is not necessary to argue at length that the distinction created by the statute between those who are allowed to appear and to answer and those who are not is not reasonable and violates the equal protection clause of the Fourteenth Amendment. *Fiorentino* v. *Probate Court* [365 Mass. 13 (1974)]."

The conclusory nature of the petitioners' brief is such that it is doubtful whether it complies with the rule that the argument in an appellant's brief "shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on." Mass. R. A. P. 16 (a) (4), 365 Mass. 860 (1974). While the petitioners, as appellants, are not entitled to have

issues not argued in the brief considered by this court, see
*Commonwealth* v. *Bernier,* 366 Mass. 717, 719 (1975),
we nevertheless take this opportunity to point out the
basic defects in their contentions.

The pertinent provision of the 1940 Relief Act, 50
U. S. C. Appendix, § 532 (3) (1970), renders the fore-
closure of a mortgage after October 6, 1942, invalid in so
far as it purports to cut off rights of a person in the
military service or recently discharged therefrom unless
that person has executed a proper waiver of his rights or
the foreclosure is made "upon an order previously
granted by the court and a return thereto made and
approved by the court." The point to be made here is
that actions taken to comply with the 1940 Relief Act,
such as the steps prescribed by St. 1943, c. 57, as
amended, are not in themselves mortgage foreclosure
proceedings in any ordinary sense. Rather, they occur
independently of the actual foreclosure itself and of any
judicial proceedings determinative of the general validity
of the foreclosure. Statute 1943, c. 57, as amended,
simply establishes procedures whereby mortgagees, in
addition to taking all steps necessary to foreclose, can
make certain that there will be no cloud on the title
following the foreclosure as a result of an interested party
having been in, or just released from, military service and
thus under the protective umbrella of the 1940 Relief Act.
See *Lynn Inst. for Sav.* v. *Taff,* 314 Mass. 380, 386
(1943). If a foreclosure were otherwise properly made,
failure to comply with the 1940 Relief Act would not
render the foreclosure invalid as to anyone not entitled to
the protection of that act. *Guleserian* v. *Pilgrim Trust
Co.* 331 Mass. 431, 433-434 (1954). See Park, Convey-
ancing, § 406 (1968 and Supp. 1974).

In view of the limited purpose of proceedings under
the 1940 Relief Act, it is evident why it was appropriate
for the Legislature, by St. 1959, c. 105, to limit access to
such proceedings to persons entitled to the benefits of the
act or to persons appearing on their behalf, and to limit

the issues in such proceedings to the existence of such persons and their rights, if any. It is true that these restrictions may prevent mortgagors from raising in these particular proceedings many meritorious issues pertaining to the mortgagee's ultimate right to foreclose. This, however, is of no constitutional significance, since other adequate procedures are available to the mortgagor in the same or another forum where these issues may be raised prior to the mortgagor's loss of his possessory or other important rights in the property subject to the mortgage. In other words, mandatory procedural segregation of various aspects of related claims or defenses is constitutionally permissible so long as all the available procedures combined satisfy the mandates of the due process clause. *Grant Timber & Mfg. Co.* v. *Gray,* 236 U. S. 133 (1915) (upholding a Louisiana statute which prohibited the defendant in a possessory suit from bringing an action to try title until after the judgment was rendered and satisfied in the. possessory action). *Bianchi* v. *Morales,* 262 U. S. 170 (1923) (upholding a Puerto Rico mortgage statute permitting a summary possessory suit by a mortgagee in which no defense except payment was generally permitted). *Lindsey* v. *Normet,* 405 U. S. 56 (1972) (upholding an Oregon statute which, in essence, restricted a tenant-defendant in a landlord's possessory action based on nonpayment of rent to the defense of payment).

As just noted, the recent *Lindsey* decision upheld a statute which prohibited a tenant from raising any defense but payment when sued by the landlord in a possessory action based on nonpayment of rent. The Supreme Court said that Oregon does not "deny due process of law by restricting the issues in . . . [the statutory] actions to whether the tenant has paid rent . . . . The tenant is barred from raising claims in the . . . [statutory] action that the landlord has failed to maintain the premises, but the landlord is also barred from . . . asserting other claims against the tenant. The

tenant is not foreclosed from instituting his own action against the landlord and litigating his right to damages or other relief in that action." 405 U. S. at 65-66 (1972). The effect of the Oregon statute upheld in the *Lindsey* case was to prevent a tenant from raising many possible defenses in an action which could result in his being deprived of a fundamental, vital property interest — the possession of a dwelling or place of business. The effect of the Massachusetts legislation here at issue is, by contrast, merely to prevent a mortgagor from raising certain defenses in an action which can result only in a determination that interested parties are not entitled to the limited benefits of the servicemen's protective statute.

We emphasize that the petitioners unquestionably have available methods of preventing foreclosure if they do in fact have a defense to foreclosure. The answer the petitioners attempted to file in the Land Court purported to incorporate by reference a bill in equity filed in the Plymouth Superior Court. See fn. 5, *supra*. This bill in equity seems to assert, among other things, that the actions of the mortgagee Quinoil, in connection with certain business transactions which allegedly served as the basis for the execution of the mortgage, constituted actionable fraud. One element of the relief sought from this alleged fraud is that Quinoil be ordered to discharge the mortgage and that the petitioners be relieved of any personal liability to the respondent Quinoil. While we have no intention of here ruling on the adequacy of this bill, we do note that a court acting under general principles of equity jurisprudence has broad power to reform, rescind, or cancel written instruments, including mortgages, on grounds such as fraud, mistake, accident, or illegality. *Rice* v. *Winslow*, 182 Mass. 273, 275-276 (1902). *Hermanson* v. *Seppala*, 255 Mass. 607, 610 (1926). *Brodie* v. *Evirs*, 313 Mass. 741, 744 (1943). If the obligation underlying the mortgage has been paid or otherwise discharged, the mortgagor may maintain a suit to compel the cancellation of the note and a discharge of

the mortgage in a form appropriate for recording. *Perry v. Oliver*, 317 Mass. 538, 541 (1945). If a mortgagee begins the process of foreclosure, a suit in the Superior Court will lie to enjoin the foreclosure and to obtain an accounting. In such a suit, the issue whether the mortgage conditions have been violated may be litigated. *McCombs* v. *Elmes*, 197 Mass. 19, 21-22 (1907). See *Newman* v. *Greenberg*, 361 Mass. 594, 596 (1972).

It does not appear possible in this Commonwealth that a foreclosure could ever be made without the mortgagor's having first received some form of notice of the proposed foreclosure and an opportunity to oppose it. If the foreclosure is to be by exercise of a power of sale, G. L. c. 244, § 14, provides that notice of the proposed sale must first be published in a local newspaper once a week for three successive weeks prior to the date of the sale. If the foreclosure is to be by entry for breach of condition, it will not be completed until three years have passed from the date of a peaceable, unopposed entry, and a certificate of entry must be recorded in the registry of deeds within thirty days from the date of entry. G. L. c. 244, §§ 1, 2. If the foreclosure is to be by action under G. L. c. 244, §§ 3, 4, a method rarely used, the ordinary procedural rules, including those pertaining to service of process, which govern all actions would of course apply. As this case demonstrates, moreover, St. 1943, c. 57, as amended, itself effectively assures that mortgagors receive personal notification of impending foreclosures. Finally, we note that even if the mortgagor does violate the conditions of the mortgage and the mortgagee commences foreclosure proceedings, the mortgagor still may redeem the mortgaged property and obtain an accounting by appropriate proceedings before the foreclosure is completed. G. L. c. 244, §§ 18-36.[6]

---

[6] No lack of notice or absence of opportunity to defend against the foreclosure is involved in this case and our discussion above suggests that a case presenting issues of such lack of notice or absence of

Indeed, the petitioners have already brought an action in the Plymouth Superior Court seeking, inter alia, an order that the mortgage be discharged. There would seem to be no obstacle to the filing of a motion to amend the presently pending action against Quinoil to seek an injunction against the foreclosure sale.

The order appealed from is affirmed. The appeal being without merit and having accomplished no purpose except delay, the respondents are to have double costs of appeal.

*So ordered.*

---

opportunity to be heard in defense is unlikely to arise. Only if and when such a case arises would we have occasion to determine whether the due process clause even has any applicability to nonjudicial mortgage foreclosures (i.e., those conducted by entry or by exercise of a power of sale), which follow private contractual provisions or the course of the common law. The substantial and growing weight of authority in apparently analogous areas suggests that in fact no "state action" is present in such foreclosures. See, for example, *Jackson* v. *Metropolitan Edison Co.* 419 U. S. 345 (1974) (utility service termination); *Bichel Optical Labs. Inc.* v. *Marquette Natl. Bank,* 487 F. 2d 906 (8th Cir. 1973) (self-help repossession under the Uniform Commercial Code); *Adams* v. *Southern Cal. First Natl. Bank,* 492 F. 2d 324 (9th Cir. 1973) (repossession); *Shirley* v. *State Natl. Bank,* 493 F. 2d 739 (2d Cir. 1974) (repossession); *Bond* v. *Dentzer,* 494 F. 2d 302 (2d Cir. 1974) (wage assignments); *Nowlin* v. *Professional Auto Sales, Inc.* 496 F. 2d 16 (8th Cir. 1974) (repossession); *Fletcher* v. *Rhode Island Hosp. Trust Natl. Bank,* 496 F. 2d 927 (1st Cir. 1974) (bank setting off of customers' deposits against indebtedness); *Nichols* v. *Tower Grove Bank,* 497 F. 2d 404 (8th Cir. 1974) (repossession). Some authority, now apparently dwindling, does exist which finds "state action" in various self-help procedures. See, for example, *Hall* v. *Garson,* 430 F. 2d 430 (5th Cir. 1970) (landlords' liens); *Boland* v. *Essex County Bank & Trust Co.* 361 F. Supp. 917 (D. Mass. 1973) (repossession). In one very recent case, *Turner* v. *Blackburn,* 389 F. Supp. 1250 (D. N. C. 1975), a divided three-judge Federal court held that North Carolina's power of sale mortgage foreclosure proceedings constitute "state action." This holding appears to be based on a provision of the North Carolina law requiring a report of the sale to be filed with the clerk of the county court and to be audited and approved by him. A result contrary to that in *Turner* v. *Blackburn, supra,* was subsequently reached in *Armeta* v. *Nussbaum,* 519 S. W. 2d 673 (1975) (Tex. Civ. App.), where the court held that there was no "state action" in a mortgagee's power of sale under a Texas deed of trust.