WORNAT DEVELOPMENT CORPORATION *vs*. GEORGE
VAKALIS & others [1]
(and two consolidated cases [2]).

Worcester. Suffolk. September 15, 1988. — November 8, 1988.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, & LYNCH, JJ.

*Mortgage*, Foreclosure, Action for deficiency. *Injunction. Practice, Civil*,
Opening statement, Directed verdict, Fair trial, Disqualification of judge.
*Consumer Protection Act*, Unfair act or practice.

In an action for a deficiency on a mortgage note after foreclosure, the judge
properly denied the mortgagor's motion for summary judgment based
on the failure of the mortgagee to comply with the notice provisions of
G. L. c. 244, § 17B, where § 17B on its face applies only to foreclosures
under a power of sale in the mortgage and the Vermont "strict foreclosure"
proceedings in issue did not involve such a power of sale. [343-346]
In an action for a deficiency on a mortgage note after foreclosure, there
was no merit to the mortgagor's contention that under the law of Vermont,
where the foreclosure had taken place, his debt was extinguished and
the deficiency action was barred. [346-347]
In an action to reach and apply to the defendant's debt a portion of the pro-
ceeds awarded the defendant in an unrelated action, there was no error
in the issuance or continuance of a preliminary injunction enjoining the
defendant from receiving those proceeds until the resolution of the un-
derlying action on the debt. [347-348]
At the trial of a claim under G. L. c. 93A, the judge correctly directed a ver-
dict for the defendant after the plaintiff's opening statement where the
opening statement plainly failed to show the existence of a viable cause
of action. [348]
There was no error at the trial of a civil action in the judge's denial of the
defendant's motion for a mistrial, motion for a new trial, and renewed
motion for the judge to recuse himself, all based on allegations of judicial
misconduct and bias, where the record clearly showed no adequate
reasons for such relief. [348-349]

---

[1] Bert Robinson and Harland Shapiro.

[2] Wornat Development Corporation *vs*. George Vakalis & others; George
Vakalis *vs*. Superior Court.

In a civil action the award to the plaintiff of attorney's fees was not unreasonable in light of the complex course of litigation taken by defense counsel. [349]

CIVIL ACTION commenced in the Worcester Division of the District Court Department on April 12, 1979.

CIVIL ACTION commenced in the Superior Court Department on May 6, 1983.

The cases were consolidated for trial in the Superior Court Department. Proceedings for preliminary injunctive relief were heard by *James P. Donohue*, J., and, in the Appeals Court, by *Charlotte Anne Perretta*, J. The cases were tried before *Donohue*, J.

The Supreme Judicial Court granted a request for direct appellate review.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on April 27, 1987.

The case was heard by *Nolan*, J., on a motion to dismiss.

*Joseph P. Secola* (*Lawrence S. Walters, Jr., & Adolphe A. Storey* with him) for George Vakalis & others.

*Burton Chandler* for Wornat Development Corporation.

*Sarah Wunsch*, Assistant Attorney General, for the Superior Court.

HENNESSEY, C.J. The defendant George Vakalis appeals from judgments of a Superior Court judge in two consolidated actions: one, a contract action for a deficiency after a mortgage foreclosure, the other, an action to reach and apply under G. L. c. 214, § 3 (6). Vakalis also appeals from the judgment of a single justice of this court dismissing Vakalis's action under G. L. c. 211, § 3, for extraordinary relief from rulings in the deficiency and the reach and apply actions. We consolidated the appeals.[3] We affirm the judgments.

On November 19, 1973, the defendants, George Vakalis, Harland Shapiro, and Bert Robinson, executed a promissory note to Wornat Development Corporation (Wornat) in exchange

[3] Because Vakalis waived his request for extraordinary relief at oral argument, we do not address the issues the proceeding raises.

for a loan of $75,000. A mortgage deed to real estate in Rockingham, Vermont, secured the note. The note stated that it should be construed under Massachusetts law. The defendants defaulted on the note and Wornat commenced a "strict foreclosure" proceeding in the Vermont Superior Court.[4] That court issued a foreclosure decree in December, 1977, which became final and extinguished the defendants' equity of redemption as of June, 1978. Wornat, as mortgagee, then acquired title to the Vermont real estate. In April, 1979, Wornat commenced a deficiency action for the full amount of the note in the Worcester Division of the District Court Department. The defendants filed an answer but failed to allege in this answer that the mortgage foreclosure satisfied, in whole or in part, the deficiency. After a number of continuances, the defendants did not appear for trial, and the trial judge issued a default judgment against them. The judge later issued an execution of that judgment in the full amount of the note, plus interest and costs, for a total of $127,190.49. Approximately three years later, Vakalis filed a motion to recall the execution and to vacate the default judgment, which the court allowed.

Prior to Vakalis's filing his motion to vacate the default judgment, Wornat commenced an action to reach and apply to the defendants' debt a portion of the proceeds awarded Vakalis in an unrelated action. In response, Vakalis filed an answer and a counterclaim alleging that Wornat had violated G. L. c. 93A, § 2, by seeking recovery of the full amount of the note after Wornat had obtained title to the Vermont real estate.

---

[4] Generally, in a decree of strict foreclosure of a mortgage, a court determines the amount a defaulting mortgagor owes and orders the mortgagor to pay this amount to the mortgagee within a specific time. Black's Law Dictionary 582 (5th ed. 1979). If the mortgagor fails to make the payment, the decree extinguishes the mortgagor's right of redemption and vests title absolutely in the mortgagee. *Id.* No sale of the property takes place. *Id.* Foreclosure by entry and possession under G. L. c. 244, §§ 1-10, which does not involve a foreclosure sale, is related to strict foreclosure. See G. S. Nelson & D. A. Whitman, Real Estate Finance Law c. 7, § 7.10 (2d ed. 1985). A minority of States allow strict foreclosure and related methods such as foreclosure by entry and possession. See generally *id.*

Wornat obtained a restraining order and later a preliminary injunction enjoining Vakalis from receiving $163,324.90 of the proceeds from the unrelated action. Vakalis appealed the allowance of the preliminary injunction to a single justice of the Appeals Court who, initially and on reconsideration, affirmed the order.

The deficiency action and the reach and apply action were consolidated for trial. Vakalis filed numerous pretrial motions in these actions. The memoranda in support of these motions advance essentially two arguments: that Wornat's failure to give Vakalis notice under G. L. c. 244, § 17B, of its intent to foreclose and seek a deficiency bars a later deficiency action; and that Wornat's failure to determine the amount of the deficiency at the Vermont strict foreclosure proceeding extinguishes Vakalis's entire obligation. In addressing Vakalis's motion for summary judgment, the motion judge rejected both of these arguments. Subsequently, a judge in the Superior Court ordered that Wornat's case-in-chief be tried separately from Vakalis's counterclaim. The parties then proceeded to trial on the stipulation that the sole issue for the jury would be the fair market value of the Vermont real estate on the date Wornat obtained title pursuant to strict foreclosure. The jury found that the real estate was worth $68,150 at that time. Based on a formula stated in the pretrial stipulation, this verdict resulted in a judgment of $164,414.12, which included $59,548.36 in attorney's fees. In the separate trial of Vakalis's G. L. c. 93A counterclaim, the judge allowed Wornat's motion for a directed verdict at the conclusion of Vakalis's opening statement.

After the trials, Vakalis renewed his motion for the trial judge to recuse himself, and filed motions for a mistrial and for a new trial. These motions were based primarily on allegations of bias and misconduct on the part of the Superior Court judge. The judge denied these motions. Vakalis appealed the judgments to the Appeals Court, and we allowed Wornat's application for direct appellate review.

1. *Applicability of G. L. c. 244, § 17B.* Vakalis asserts that Wornat must comply with the notice requirement of G. L. c. 244,

§ 17B,[5] in order to bring a deficiency action subsequent to a strict foreclosure proceeding in Vermont. Vermont law does not require a mortgagee to give notice of intent to seek a future deficiency prior to a strict foreclosure proceeding, *United Sav. Bank* v. *Barber*, 135 Vt. 278, 281 (1977), and Vakalis does not contend otherwise. Assuming that Massachusetts law governs, we conclude that G. L. c. 244, § 17B, does not apply to a foreclosure proceeding, such as this one, which does not involve a power of sale.

Section 17B on its face applies only to foreclosures under a power of sale. The text of § 17B states that, unless a mortgagee "before the date of the sale under the power in the mortgage" notifies the mortgagor of his or her intention to foreclose, and warns the mortgagor of the potential deficiency, the mortgagee may not bring a deficiency action "after a foreclosure sale."

---

[5] Section 17B provides in part: "No action for a deficiency shall be brought after June thirtieth, nineteen hundred and forty-six by the holder of a mortgage note or other obligation secured by mortgage of real estate after a foreclosure sale by him taking place after January first, nineteen hundred and forty-six unless a notice in writing of the mortgagee's intention to foreclose the mortgage has been mailed, postage prepaid, by registered mail with return receipt requested, to the defendant sought to be charged with the deficiency at his last address then known to the mortgagee, together with a warning of liability for the deficiency, in substantially the form below, not less than twenty-one days before the date of the sale under the power in the mortgage, and an affidavit has been signed and sworn to, within thirty days after the foreclosure sale, of the mailing of such notice. A notice mailed as aforesaid shall be a sufficient notice, and such an affidavit made within the time specified shall be prima facie evidence in such action of the mailing of such notice. The notice and affidavit, respectively, shall be in substantially the following forms:

"*Notice of Intention to Foreclose and of Deficiency After Foreclosure of Mortgage.*

"*To A.B.*          Street                                   .

"You are hereby notified, in accordance with the statute, of my intention, on or after             , to foreclose by sale under power of sale for breach of condition, the mortgage held by me on property on             Street in                      in the County of                dated and recorded with                      deeds Book          page          to secure a note (or other obligation) signed by you, for the whole, or part, of which you may be liable to me in case of a deficiency in the proceeds of the foreclosure sale."

G. L. c. 244, § 17B (1986 ed.).

G. L. c. 244, § 17B. The form of the notice appended to the section also states "[y]ou are hereby notified, in accordance with the statute, of my intention . . . to foreclose by sale under power of sale for breach of condition, the mortgage held by me . . . ." The section thus expressly applies only when a foreclosure sale occurs pursuant to a power of sale in the mortgage.

Vakalis, however, argues that § 17B should apply to all foreclosures and that we should construe the statute accordingly. We do not agree. The distinction the Legislature preserved between mortgages foreclosed under a power of sale and those foreclosed by some other method is a rational one. In Massachusetts, two primary foreclosure methods exist: foreclosure under a power of sale, G. L. c. 244, §§ 11-17, and foreclosure by entry and possession, G. L. c. 244, §§ 1, 2. *Beaton* v. *Land Court*, 367 Mass. 385, 393, appeal dismissed, 423 U.S. 806 (1975). In a foreclosure under a power of sale, the mortgagee is empowered to sell the property at a foreclosure sale and to apply the proceeds to the mortgagor's debt. Notice of the mortgagee's intention to foreclose, and of the possibility that the sale may not extinguish the full amount of the mortgagor's debt, allows the mortgagor to attend the foreclosure sale and to bid or take other action to improve the sale price, and thus eliminate or reduce any deficiency. See *Palumbo* v. *Audette*, 323 Mass. 559, 560 (1949). Notice under § 17B therefore enables mortgagors to "look out for their interests at the foreclosure sale." *Id*. Because § 17B notice allows a mortgagor to protect against a deficiency, failure to give § 17B notice prevents a mortgagee from seeking further recovery in a later deficiency action. *Guempel* v. *Great Am. Ins. Co.*, 11 Mass. App. Ct. 845, 851 (1981). See *Boston* v. *Gordon*, 342 Mass. 586, 593 (1961).

In contrast, in a foreclosure by entry and possession, and in the Vermont strict foreclosure proceedings which Wornat used in this case, a sale, which requires this form of notice protection, does not take place. In Massachusetts, a mortgagee who makes a peaceable entry, records a certificate of entry, and retains possession for three years, extinguishes the mort-

gagor's right of redemption. G. L. c. 244, §§ 1, 2. In Vermont, possession for the requisite period after a judicial decree of foreclosure and recording of the judgment similarly extinguishes the mortgagor's right of redemption. Vt. St. Ann. tit. 12, §§ 4526-4530 (1973). If the value of the property the mortgagee obtains by entry and possession is not sufficient to satisfy the entire debt, the mortgagee must later bring a deficiency action to recover the difference. *Boston* v. *Gordon, supra* at 593. *Draper* v. *Mann,* 117 Mass. 439, 441 (1875). *Morse* v. *Merritt,* 110 Mass. 458, 460 (1872), *S.C.,* 113 Mass. 271 (1873). *Hewey* v. *Richards,* 116 Vt. 547, 550-551 (1951). By presenting evidence as to the value of the foreclosed property at the trial of the deficiency action, a mortgagor can protect against or limit a deficiency. Presenting evidence at a deficiency action thus protects a mortgagor in much the same way as attending a foreclosure sale. In the deficiency action Vakalis was able to present evidence, contest Wornat's claimed deficiency, and establish the value of the Vermont real estate. Vakalis had a suitable opportunity to protect against a deficiency in this case.

Vakalis argues that mortgagors will be unaware of foreclosures if we do not expand the notice requirements of § 17B. He fails to consider that the recorded certificate of entry required by G. L. c. 244, §§ 1, 2, is ample notice of the mortgagee's intent to foreclose by entry and possession. *Beaton, supra* at 393. Vermont procedures also require notification of a strict foreclosure. Vt. St. Ann. tit. 12, § 4523 (b) (1973). Vt. R. Civ. P. 80.1 (1971 & Supps. 1987, 1988). Notice under § 17B clearly is not the only form of notice a mortgagor receives. Because we conclude that the provisions of § 17B do not apply to a foreclosure by entry and possession in Massachusetts, we shall not apply them to a strict foreclosure in Vermont. The Superior Court judge properly denied Vakalis's motion for summary judgment on this issue.

2. *Wornat's failure to establish the deficiency in the Vermont strict foreclosure proceeding.* Vakalis argues first that Wornat's failure to establish at the foreclosure proceeding that the property was worth less than the debt extinguishes Vakalis's obliga-

tion and bars Wornat's deficiency action under Vermont law. Second, Vakalis argues that Vermont law should govern this aspect of the case. Even if we assume that Vermont law applies, we cannot accept Vakalis's interpretation of Vermont procedural requirements. The Supreme Court of Vermont has held consistently that "obligations secured by a mortgage are not extinguished by foreclosure proceedings and decree unless the mortgaged property is sufficient for that purpose," *United Sav. Bank* v. *Barber*, 135 Vt. at 279, quoting *Hewey* v. *Richards*, 116 Vt. 547, 551 (1951), and has never imposed a requirement that the mortgagee in a strict foreclosure proceeding establish the amount of a deficiency at that proceeding. See *id.*; *Bailey* v. *Groton Mfg. Co.*, 113 Vt. 288, 290-291 (1943). But see *Dieffenbach* v. *Attorney Gen.*, 604 F.2d 187, 192 n.9 (2d Cir. 1979) ("a mortgagee who takes possession under a foreclosure decree that has become absolute cannot sue on the debt unless he has established in the foreclosure proceedings that the property is worth less than the debt"). On the contrary, the court indicated that a later deficiency action is the appropriate proceeding in which to determine the value of property when, in *Hewey* v. *Richards*, *supra*, it held that Vermont courts should place on the mortgagee, in a deficiency action after strict foreclosure, the burden of proving to what extent the mortgaged property failed to satisfy the debt. Vermont law does not support Vakalis's contention that the debt to Wornat is extinguished. We therefore conclude that there was no error in the decision of the Superior Court judge to deny Vakalis's motion for summary judgment on this issue.

3. *Other issues*. Vakalis claims that the Superior Court judge invalidly granted, and that the Appeals Court judge inappropriately maintained, the preliminary injunction. The standard for reviewing the grant of a preliminary injunction is whether the lower court has abused its discretion. *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609, 615 (1980). The lower court must assess the risk of irreparable harm to each party in light of that party's chance of success on the merits. *Id.* at 617. "[W]here the balance between these risks cuts in favor of the moving party," the judge may issue a preliminary injunc-

tion. *Id.* Here, the Superior Court judge could well have found, on the record before him, that Wornat was entitled to a preliminary injunction. Furthermore, the orders of the single justice of the Appeals Court demonstrate a thorough assessment of the harm the preliminary injunction might cause Vakalis in light of Vakalis's likelihood of success on the merits, and a careful balancing of the equities. We conclude that there was no error in the issuance or continuance of the preliminary injunction.

Vakalis contends that the Superior Court judge incorrectly directed a verdict for Wornat after Vakalis's opening statement in his G. L. c. 93A counterclaim. The opening statement essentially asserted that Wornat had violated c. 93A by seeking recovery of the full amount of the note after Wornat had obtained title to the Vermont real estate. Where a plaintiff's opening statement plainly fails to show the existence of a viable cause of action, the trial judge may properly direct a verdict for the defendant. E.g., *Boyajian* v. *Kachadorian*, 357 Mass. 121, 122 (1970). Wornat persuasively argues that a case cannot be made on these facts. We agree. Vakalis received notice that Wornat was pursuing an action for the full amount of the note; Vakalis had an opportunity to raise in his answer the defense that the Vermont foreclosure proceeding had satisfied some or all of the debts; and Vakalis had ample occasion to litigate the actual amount of its remaining debt. We conclude that, in these circumstances, Wornat's acts were, as a matter of law, neither unfair nor deceptive under G. L. c. 93A, and consequently the judge correctly directed a verdict on the counterclaim.[6]

Because we conclude that Vakalis's counterclaim has no merit, Vakalis's contention that he was prejudiced by the judge's separation of his counterclaim from the case-in-chief also fails. There was no prejudicial error in the bifurcation order.

Vakalis also appeals the judge's denial of his motion for a mistrial, his motion for a new trial, and his renewal of a motion

---

[6] It follows from this conclusion that the judge correctly directed a verdict on Vakalis's c. 93A claim for Robinson and Shapiro, who Vakalis argues were "accessories" to Wornat's actions.

for the judge to recuse himself. As grounds for these motions, Vakalis alleged judicial misconduct and bias. Our review of the record shows clearly that there were no adequate reasons for such relief. The record does not show bias or misconduct; the record shows quite the contrary. The Superior Court judge appropriately assisted trial counsel, who had never before tried a jury case. The judge was well within his discretion in denying these motions. *Commonwealth* v. *Gogan*, 389 Mass. 255, 259 (1983) (standard for disqualification). *Galvin* v. *Welsh Mfg. Co.*, 382 Mass. 340, 343 (1981) (standard for granting new trial). *Riley* v. *Davison Constr. Co.*, 381 Mass. 432, 444 (1980) (standard for granting mistrial).

Finally, Vakalis appeals the award of attorney's fees. The original promissory note and the pretrial stipulation expressly provided for reasonable attorney's fees. In light of the complex course Vakalis's counsel has taken, we cannot say the award of attorney's fees was unreasonable.

*Judgments affirmed.*