**FEDERAL DEPOSIT INSURANCE CORPORATION as Liquidating Agent of New Heritage Bank, Plaintiff,**

v.

**Mark O. HENRY, Individually and as Trustee of Amie Realty Trust and George H. Schruender, Jr., Defendants.**

Civ. A. No. 92–11360–T.

United States District Court,
D. Massachusetts.

April 14, 1993.

Mark C. Michalowski, Sherburne, Powers & Needham, Boston, MA, for plaintiff.

Mark B. Johnson, Law Office of Mark B. Johnson, Andover, MA, for defendants.

## MEMORANDUM

TAURO, Chief Judge.

Plaintiff, the Federal Deposit Insurance Corporation ("FDIC"), as liquidating agent of New Heritage Bank ("New Heritage"), brings this action to recover a deficiency under two promissory notes executed and delivered to New Heritage by defendant Mark O. Henry in his capacity as trustee of Amie Realty Trust (the "Trust"), and guaranteed by Henry and George H. Schruender, Jr., individually.[1] Presently before the court is defendants' motion for partial summary judgment.

## I

### Background

This case was originally brought in Suffolk County Superior Court on October 22, 1990. On March 6, 1992, the Commissioner of Banks for the Commonwealth declared New Heritage insolvent and appointed the FDIC as its liquidating agent. This appointment was confirmed by an Order of the Supreme Judicial Court. On June 4, 1992, the FDIC substituted itself as the proper party plaintiff and removed the action to this court pursuant to 12 U.S.C. § 1819(b)(2)(B).

The undisputed facts are as follows. On December 23, 1987, the Trust entered into a loan agreement (the "Loan Agreement") with New Heritage.[2] Pursuant to this agreement, the Trust executed a note (the "Note") in the amount of $3,000,000.00, secured by a mortgage (the "Mortgage") on a development known as Stonebridge Village located in Plaistow, New Hampshire. At the same time, and as part of the same transaction, Henry and Schruender individually executed guaranties (collectively referred to as the "Guaranties") for the Trust's debt to New Heritage. The Loan Agreement was modified and amended on January 15, 1988, and again on July 8, 1988. A third and final amendment to the Loan Agreement (the "Third Amendment") was executed in Lawrence, Massachusetts on June 22, 1990.[3] Upon execution of the Third Amendment, the Note was substituted with an interest note in the amount of $98,345.24 and a substitute note in the amount of $1,905,000.00 (collec-

---

1. The FDIC also seeks attorney's fees, interest, and costs. Defendants counterclaim for fraud and violation of Mass.Gen.L. ch. 93A.

2. Shortly thereafter, defendant Henry succeeded Robert J. LaRochelle as trustee for the Trust.

3. Paragraph 2.2 of Article II of the Third Amendment provides that "[t]he Original Loan Documents shall remain in full force and effect in accordance with their terms except as amended by the Revised Loan Documents." Defs.' Mem. Ex. 3, at 3.

tively referred to as the "Notes").[4] The Trust subsequently defaulted on the Notes and on December 27, 1990, New Heritage foreclosed on the Stonebridge Village property. The foreclosure proceeded pursuant to the New Hampshire power of sale statute, N.H.Rev.Stat. § 479:25, in accordance with a power of sale provision contained in the Mortgage.[5] A deficiency under the Notes in excess of $1,000,000.00 resulted. New Heritage never provided notice to defendants indicating the possibility of a deficiency.

## II

### Analysis

Summary judgment is appropriate when there is no genuine issue as to any material fact, and where the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Aponte–Santiago v. Lopez–Rivera,* 957 F.2d 40, 40–41 (1st Cir.1992). The sole question before the court is whether New Heritage's failure to provide defendants with notice of a potential deficiency required by Massachusetts law precludes the FDIC from now recovering the deficiency under either the Notes and/or the Guaranties.

### A. *Liability under the Notes*

Defendant Henry, in his capacity as trustee of the Trust, asserts that New Heritage was required to comply with the notice provision of Mass.Gen.L. ch. 244, § 17B [6] in order to bring a deficiency action subsequent to its power of sale foreclosure proceeding in New Hampshire. New Hampshire law, however, does not require a mortgagee to give notice of intent to seek a future deficiency prior to a power of sale foreclosure proceeding. *See* N.H.Rev.Stat. § 479:25. The FDIC claims that New Hampshire law governs this transaction because (1) Massachusetts law dictates that deficiency actions are to be governed by the same law that governed the accompanying foreclosure; and (2) the parties expressly agreed that New Hampshire law was to apply. For the reasons set forth below, this court rejects both of the FDIC's claims and finds that Massachusetts law governs this deficiency action.

■ In general, real property questions, including those concerning real estate foreclosures, are determined by the sovereign within whose territory the land is located (i.e., the law of the situs). *See* Restatement (Second) of Conflict of Laws §§ 228, 229, 254 (1971). Contractual issues, on the other hand, are generally determined by the law of the state where the contract is executed. *See* Restatement (Second) Conflict of Laws, §§ 186–188 (1971); *cf. Walling v. Cushman,* 238 Mass. 62, 65, 130 N.E. 175, 176 (1921) (law applicable to a note is the law of the place where the note is payable). Deficiency actions, such as the one at bar, relate to the enforcement of an underlying debt (e.g., notes and/or guaranties) and hence fall under this latter category. *See* Restatement (Sec-

---

4. The Notes provide that,

upon any of the events specified above or upon non-payment of this Note or of any such liability or obligation, whenever due, and at any time or times thereafter, without any demand or notice except to such extent that Notice may be required by applicable law, the Holder may sell or dispose of any or all such security or other property and may exercise any and all right accorded the Holder by the Massachusetts Uniform Commercial Code.

Defs.' Mem. Ex. 6, at 2; Defs.' Mem. Ex. 7, at 2.

5. Paragraph 19 of the Mortgage provides that New Heritage shall have "THE STATUTORY POWER OF SALE." Paragraph 20 of the Mortgage provides that "wherever the words STATUTORY POWER OF SALE appear herein, they shall have such meaning as is provided by the

law of the state in which the mortgaged premises are located, as amended from time to time." Pl.'s Mem. Ex. A at 3.

6. Section 17B provides in pertinent part:

No action for a deficiency shall be brought ... by the holder of a mortgage note or other obligation secured by mortgage of real estate after a foreclosure sale by him ... unless a notice in writing of the mortgagee's intention to foreclose the mortgage has been mailed ... to the defendant sought to be charged with the deficiency at his last address then known to the mortgagee, together with a warning of liability for the deficiency ... not less than twenty-one days before the date of the sale under the power in the mortgage....

Mass.Gen.L. ch. 244, § 17B.

ond) Conflict of Laws, § 229 (comment e) (1971).

■ Overriding the general principles outlined above is the rule that an express agreement by the parties that the contract is to be governed by the laws of a particular state will be given effect if the contract bears a reasonable relation to the chosen state and no countervailing public policy of the forum demands otherwise. *See Steranko v. Inforex, Inc.,* 5 Mass.App.Ct. 253, 260, 362 N.E.2d 222, 228 (1977); *see also* Restatement (Second) of Conflict of Laws, §§ 186–188 (1971). It is undisputed that the parties expressly agreed in the Mortgage that New Hampshire law was to govern the foreclosure. Neither the Third Amendment nor the Notes contain a New Hampshire choice of law clause, however. Thus, under general conflict of law principles, this deficiency action will be governed by the law of the state where the Notes and the Guaranties were executed.

■ Upon review, there appears to be only one case in which a Massachusetts court has contemplated the application of Mass. Gen.L. ch. 244, § 17B to an out of state foreclosure proceeding. In *Wornat Dev. Corp. v. Vakalis,* 403 Mass. 340, 529 N.E.2d 1329 (1988), the Massachusetts Supreme Judicial Court declined to apply the § 17B notice of deficiency requirement to a Vermont strict foreclosure. In arriving at its decision, the *Vakalis* court analyzed the Massachusetts foreclosure proceeding and noted that:

> the distinction the Legislature preserved between Mortgages foreclosed under a power of sale and those foreclosed by some other method is a rational one. In Massachusetts, two primary foreclosure methods exist: foreclosure under power of sale, G.L. c. 244, §§ 11–17, and foreclosure by entry and possession, G.L. c. 244, §§ 1, 2.

*Vakalis,* 403 Mass. at 345, 529 N.E.2d at 1332 (citations omitted).

The court then analyzed Vermont's strict foreclosure scheme and determined that it was analogous to Massachusetts' foreclosure by entry and possession. The court thus decided:

> Because we conclude that the provisions of § 17B do not apply to a foreclosure by entry and possession in Massachusetts, we shall not apply them to a strict foreclosure in Vermont.

*Vakalis,* 403 Mass. at 346, 529 N.E.2d at 1332.

Unlike the situation in *Vakalis,* here foreclosure was effected pursuant to a New Hampshire power of sale and thus the application of § 17B is warranted. The Massachusetts legislature enacted Mass.Gen.L. ch. 244, § 17B to provide mortgagors with notice of the possibility that a foreclosure under a power of sale might not extinguish the full amount of their debt. Such notice enables mortgagors to "look out for their interests at the foreclosure sale." *Palumbo v. Audette,* 323 Mass. 559, 560, 83 N.E.2d 549, 550 (1949); *see Vakalis,* 403 Mass. at 345, 529 N.E.2d at 1332; *see also Seronick v. Levy,* 26 Mass.App.Ct. 367, 373, 527 N.E.2d 746, 750, *review denied,* 403 Mass. 1104, 530 N.E.2d 797 (1988) (explaining that a mortgagor might take steps to stimulate bidding at the foreclosure sale or might decide to redeem or buy in the property if made aware that a deficiency liability was impending). Although New Heritage complied with all applicable provisions of New Hampshire foreclosure law, including notice of foreclosure pursuant to N.H.Rev.Stat. § 479:25, the additional notice of deficiency imposed by Mass. Gen.Law. ch. 244, § 17B was not given. New Heritage's failure to provide § 17B notice precludes the FDIC from now seeking to recover the deficiency from Henry as trustee for the Trust. *See Vakalis,* 403 Mass. at 345, 529 N.E.2d at 1332; *Guempel v. Great Am. Ins. Co.,* 11 Mass.App.Ct. 845, 851, 420 N.E.2d 353, 356 (1981). Accordingly, partial summary judgment is allowed as to defendant Henry, in his capacity as trustee of the Trust.

B. *Liability under the Guaranties*

■ This court now turns to the issue of whether defendants Henry and Schruender can be held liable, individually as guarantors under the Notes, despite the absence of § 17B notice. In general, § 17B notice of deficiency need not be provided to guaran-

tors as the amount due under a guarantee does "not constitute a deficiency resulting from a foreclosure sale of real property within the meaning of § 17B." *Senior Corp. v. Perine*, 16 Mass.App.Ct. 967, 967, 452 N.E.2d 1160, 1161, *review denied*, 390 Mass. 1103, 454 N.E.2d 1276 (1983); *see also Seronick*, 26 Mass.App.Ct. at 372, 527 N.E.2d at 750 (citing *Perine* as holding that there exists no statutory obligation on the part of a foreclosing mortgagee to notify guarantors). Henry and Schruender contend that their situation is different from that in *Perine* as "Perine's obligations were not contingent upon the result of the foreclosure action. Nor did his obligations arise from the mortgage." *Perine*, 16 Mass.App.Ct. at 967, 452 N.E.2d at 1162. Henry and Schruender argue that the Third Amendment established their *direct* liability through and with the Trust. This court disagrees and notes that the Guaranties provide in relevant part:

> the undersigned does hereby *unconditionally guarantee* to Bank, its successors and assigns, the prompt and due payment and fulfillment when due, whether by acceleration or otherwise, in accordance with the terms thereof, of *all indebtedness, obligations, and liabilities of every kind and nature, now or at any time hereafter, owing to the Bank by the Borrower, whether direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising* (hereinafter referred to as "Liabilities").…

Defs.' Mem. Exs. 1, 2 (emphasis added).

This court thus finds that Henry and Schruender's individual obligations stem solely from their contracts of guaranty, the independence of which are apparent from their provisions.

Henry and Schruender also argue that they have been discharged from any liability under the Guaranties by Mass. Gen.L. ch. 106, § 3–606(1)(a), due to the failure of New Heritage to send § 17B notice to the Trust. Section 3–606(1)(a) operates to discharge any party to an instrument if the holder of the instrument discharges others responsible on the instrument without expressly reserving its rights. *See* Mass. Gen.L. ch. 106, § 3–606(1)(a). Under Article 3 of the Massachusetts Uniform Commercial Code (the "UCC"), an "instrument" is defined as a "negotiable instrument" which is a writing signed by a maker or drawer and containing an unconditional promise to pay a sum certain in money on demand or at a definite time. *See* Mass.Gen.L. ch. 106, §§ 3–102(1)(e), 3–104. A guaranty is a promise to answer for the payment of another's debt or the performance of another's obligation. *See* Black's Law Dictionary 634 (5th ed. 1979). As guaranties are clearly not negotiable instruments, Henry and Schruender's reliance on § 3–606(1)(a) is in error. *See Associates Discount Corp. v. Elgin Organ Center, Inc.*, 375 F.2d 97, 99 (7th Cir. 1967); *First Nat'l Bank v. Energy Equities, Inc.*, 91 N.M. 11, 16–17, 569 P.2d 421, 426–27 (Ct.App.1977). Accordingly, this court denies partial summary judgment as to defendants Henry and Schruender, individually as guarantors.

### III

#### Conclusion

For the foregoing reasons, defendants' motion for partial summary judgment is hereby ALLOWED in part and DENIED in part. It is ALLOWED as to defendant Mark O. Henry, in his capacity as trustee of the Trust. It is DENIED as to both defendants Henry and George H. Schruender, Jr., individually as guarantors.