LEWIS M. SERONICK, trustee, vs. ELIOT LEVY;
BARBARA SCHONFELD, third-party defendant.

No. 87-782.

Norfolk. May 11, 1988. — September 2, 1988.

Present: PERRETTA, DREBEN, & KASS, JJ.

*Negotiable Instruments*, Liability of representative. *Guaranty. Mortgage*,
    Foreclosure, Deficiency after foreclosure. *Real Property,* Mortgage.
    *Contribution. Joint Obligation.*

The manner in which two persons signed the face of a mortgage note imposed
    personal liability on each as a comaker of the note. [370-371]
Where a maker of a note also signed the note as a guarantor, that person's
    guaranty was surplusage and without effect. [371]
Where one of two comakers of a mortgage note received from the mortgagee
    pursuant to G. L. c. 244, § 17B, a notice of impending foreclosure
    proceedings with a warning of liability for a potential deficiency, equit-
    able considerations required that comaker to have provided reasonable
    notice of the foreclosure to his fellow comaker against whom he proposed
    to invoke the right of contribution. [371-373]

CIVIL ACTION commenced in the Superior Court on January
12, 1976.

The case was tried before *William G. Young*, J.

*Preston W. Halperin* (*Robert W. Levy* with him) for Eliot
Levy.

*Mark Schonfeld* for Barbara Schonfeld.

KASS, J. As background to the controversy, it is necessary
to describe the terms and appearance of the mortgage note
which spawned it. Barbara Schonfeld (she was then Barbara
Sussman) and Eliot Levy signed a mortgage note, dated October
2, 1970, in the principal amount of $53,508.57, payable to
Lewis M. Seronick, trustee of Lou-El Real Estate Trust. Schon-
feld's and Levy's signatures at the foot of the note were un-

adorned by any title or description which indicated that they were signing other than as individuals, although at the top of the note, in the promise-to-pay clause, they are described as trustees of the Bobbie-El Realty Trust.

On the reverse side of the note there appear identical texts of guaranty, apparently affixed with an ink pad stamp, each signed by Monroe Sussman (Barbara Schonfeld's then husband), Barbara Sussman (as she then was), and Eliot Levy. There is no explanation why the identical guaranty appears twice. Each is dated October 2, 1970. The signature of James B. Marcus, a lawyer, appears on the reverse side as "[w]itness to all 3."

Except for conveying her title to Levy two months later, Schonfeld had nothing further to do with the mortgaged property, which was in West Roxbury. In July, 1975, Seronick took steps to foreclose the mortgage. He gave Levy, but not Schonfeld, a notice under G. L. c. 244, § 17B, of the impending foreclosure proceedings, with a warning that he would hold Levy liable for any deficiency.[1] The record allows no inference that Schonfeld became aware in some other way of the foreclosure. Sweeping aside a conventionally tangled history of intervening dealings and litigation, it is sufficient to report that Levy settled with Seronick for $40,000, and then turned to Schonfeld for $20,000 in contribution as a coguarantor.

The claim for contribution by Levy against Schonfeld was put to a jury on instructions which permitted the jury to decide whether Schonfeld was liable as a comaker, a coguarantor, or both. The jury returned a verdict that Schonfeld was not liable as a comaker, but was liable as a coguarantor. The Superior Court judge who presided at the trial allowed a motion for judgment notwithstanding the verdict on the ground that "[t]he jury's verdict, which found Barbara Schonfeld liable on as a co-

---

[1] General Laws c. 244, § 17B, inserted by St. 1945, c. 604, § 1, provides in pertinent part: "No action for a deficiency shall be brought . . . by the holder of a mortgage note . . . unless a notice in writing of the mortgagee's intention to foreclose . . . has been mailed . . . to the defendant sought to be charged with the deficiency . . ., together with a warning of liability for the deficiency . . . ."

guarantor and not as a comaker, establishes that she did not receive notice of intent to charge for deficiency, as required by G. L. c. 244, § 17B; hence she cannot be held liable on the guarant[y]." From the resulting judgment for Schonfeld, the third-party plaintiff, Levy, has appealed.

We think the judge was correct in entering judgment for Schonfeld, but, as will appear, not for the reason the judge gave, i.e., that Schonfeld did not receive notice under G. L. c. 244, § 17B. A correct decision, however, may be sustained on appeal on any valid ground, even if not raised below or articulated by the trial judge. *Doeblin* v. *Tinkham Dev. Corp.*, 7 Mass. App. Ct. 720, 722 (1979), and cases cited.

As a further setting of the stage on which we may examine the legal issues in the case, it is necessary to outline Schonfeld's position. Schonfeld raised three points in her defense: (1) her then husband had forced her to sign the loan papers under physical and psychological compulsion, and Levy was aware, or shortly became aware, of the duress; (2) there was a later contract under which Levy had released Schonfeld from further obligation to him in connection with the loan from Seronick; and (3) she had not received the statutory notice to which she was entitled if she were to be held liable for a deficiency as a comaker of the note. The judge reasonably inferred that, if the jury had accepted the duress and superseding contract defenses, they would have found for Schonfeld in her capacity as maker and as guarantor. Since the jury found for Schonfeld as a comaker but held her liable to Levy in her capacity as guarantor, it followed that the jury had found she had not received a notice under G. L. c. 244, § 17B, from the mortgagee (Seronick).

Finding whether Schonfeld had acted under compulsion, whether there had been a later contract, and whether Schonfeld had received notice of foreclosure was jury business. The legal effect of Schonfeld's signature on the face of the note and on its reverse side involve applications of the Uniform Commercial Code and the law of suretyship, which are functions of the court.

1. *Status of the signatures on the face of the mortgage note.* Although Levy's third-party complaint against Schonfeld sought contribution from her as a coguarantor, the jury were correctly instructed that she was potentially liable as a comaker of the note.[2] Ordinarily, when persons sign a negotiable note in the bottom right hand corner, that act indicates an intent to sign as a maker of the note. *First Safety Fund Natl. Bank v. Friel*, 23 Mass. App. Ct. 583, 584-585 (1987). *Guinness Import Co.* v. *DeStefano*, 25 Mass. App. Ct. 366, 367-368 (1988), and authorities cited. Comment to § 3-402 of the Uniform Commercial Code, 2 U.L.A. (Master ed. 1977). Levy's and Schonfeld's note lacks a clear indication otherwise and any ambiguities are resolved against the signatories with a determination that they are both makers. *First Safety Fund Natl. Bank v. Friel*, 23 Mass. App. Ct. at 584. To be sure, the designation of Schonfeld and Levy as trustees at the top of the note and the circumstance that their guaranties were demanded constitute some contraindications to attributing to them the role of individual makers. So much of the trial record as has been furnished, however, discloses no development of the point that Schonfeld and Levy signed the face of the note solely in trustee capacity.[3] Nor, as observed in note 2, *supra*, has the point been argued on appeal. Prior to the enactment of G. L. c. 203, § 14A (see note 3 *supra*), the general rule was that "in the absence of a stipulation to the contrary a trustee is personally liable in an action on a contract made by him for the benefit of the trust estate." *Dolben* v. *Gleason*, 292 Mass. 511, 513 (1935). Compare *Baker* v. *James*, 280 Mass. 43, 47 (1932). The manner in which Schonfeld and Levy signed the face of the note imposed liability upon them as makers.

---

[2] There was an objection after the judge's charge that the signatures of Levy and Schonfeld on the face of the note were in a representative capacity, i.e., as trustees, but the point has not been pressed on appeal.

[3] When the note was made, in 1970, neither Levy nor Schonfeld would have had the benefit of G. L. c. 203, § 14A, inserted by St. 1976, c. 515, § 28, which provides that a trustee who reveals his capacity as trustee shall not be personally liable. That statute became effective on January 1, 1978 (see St. 1977, c. 76, § 2). It is not applied retroactively. *Henderson* v. *D'Annolfo*, 15 Mass. App. Ct. 413, 424 n.14 (1983).

2. *Liability as guarantor.* If one is primarily liable as a maker, jointly and severally, it adds nothing to say one is liable all over again, and, in general, "when a maker also signs a note as guarantor, the guaranty is surplusage." *Ligran, Inc.* v. *Medlawtel, Inc.*, 86 N.J. 583, 589 (1981). See also: *Valinda Builders, Inc.* v. *Bissner*, 230 Cal. App. 2d 106, 110 (1964); *Union Bank* v. *Dorn*, 254 Cal. App. 2d 157, 159 (1967); *Rock Island Bank & Trust Co.* v. *Stauduhar*, 59 Ill. App. 3d 892, 901 (1978); *Citizens Bank & Trust Co.* v. *Gibson*, 463 N.E.2d 276, 278 n.1 (Ind. App. 1984).

The difficulty with the jury's finding that Schonfeld was liable in her capacity as guarantor to make contribution to Levy is that she could not, in the circumstances of this case, be a guarantor of a debt for which she was jointly and severally liable as a maker. The judge's allowance of the motion for judgment notwithstanding the verdict is supportable on that basis. Once Schonfeld's guaranty is understood, in the circumstances, to be without effect, it cannot be the basis for other rights.

3. *Failure to notify Schonfeld of impending foreclosure sale and liability for any deficiency.* It will be recalled that the jury, to reach its verdict, must have found as an underlying fact that Schonfeld had not received a notice under G. L. c. 244, § 17B, from the mortgagee. For that finding there was ample support in the record. Only one § 17B notice was admitted in evidence, and it was directed to Levy. Seronick's lawyer testified that he had no memory of sending a like notice to Schonfeld, and that he had pursued Levy because he had suspected neither Schonfeld nor Sussman (the ex-husband) could answer to a judgment. The judge instructed the jury that if Schonfeld had not received a § 17B notice she could not be liable as a comaker of the note but could be liable as a guarantor. By choosing the ground he did for allowing Schonfeld's motion for judgment notwithstanding the verdict, the judge must, on further thought, have concluded that failure to give the statutory notice cancelled the liability of a guarantor, as well as a maker.

Section 17B, however, does not speak to the obligation of a comaker (or a coguarantor, assuming for the sake of the discus-

sion that Schonfeld, contrary to what we have decided in part 2 of this opinion, had the status of a guarantor) to notify a fellow comaker (or coguarantor) of a potential deficiency liability. Rather, the statute imposes the obligation on the mortgagee, who has the obligation to warn mortgagors and those liable with them or through them on mortgage obligations. *Palumbo* v. *Audette*, 323 Mass. 559, 560 (1949). *Guempel* v. *Great American Ins. Co.*, 11 Mass. App. Ct. 845, 850-851 (1981). The duty to warn of a potential deficiency liability pertains to "the defendant sought to be charged with the deficiency." G. L. c. 244, § 17B, as inserted by St. 1945, c. 604, § 1. The use of the definite article means that the mortgagee need notify only those mortgagors whom the mortgagee chooses to make targets of a potential deficiency claim.

There is no statutory obligation on the part of a foreclosing mortgagee to notify guarantors because the liability of a guarantor does not flow from an "obligation secured by a mortgage of real estate" but is independent of that obligation. *Senior Corp.* v. *Perine*, 16 Mass. App. Ct. 967, 968 (1983). Failure by the mortgagee to give Schonfeld the § 17B notice did not, as the judge seemed to think, extinguish her liability as comaker or, had such been her status, as guarantor.

If, as the judge appears to have assumed, there is a duty on the part of a comaker or coguarantor to notify a counterpart of potential liability based on principles of contribution, that duty must flow from something other than the statutory source, i.e., G. L. c. 244, § 17B. Does the duty adhere in exercising the right of contribution?

When one debtor pays a common debt, a right of contribution arises, and this is so whether the common obligation is at the level of coprincipals or cosureties. *Quintin* v. *Magnant*, 285 Mass. 450, 451-452 (1934). Restatement of Restitution § 81 (1937). See *Merchants Discount Co.* v. *Federal St. Corp.*, 300 Mass. 167, 172 (1938). The right of contribution presupposes that the underlying obligations of the codebtors are equal in kind and degree. *Stone* v. *Fenno*, 6 Allen 579, 580-581 (1863). *Quintin* v. *Magnant, supra* at 451. Thus, as between a

principal and a guarantor there is no right of contribution.[4] If Levy's status is that of maker, and, as was the case, he settled the debt, the obligation of any guarantor is extinguished. Restatement of Security §§ 115(1), 116 (1941). Arant, Suretyship and Guaranty § 49 (1931).

Principles of contribution rest on equitable grounds. *McBride* v. *Potter-Lovell Co.*, 169 Mass, 7, 9 (1897). Simpson, Suretyship 238-239 (1950). Considerations of fairness also underlie the statutory notice required by G. L. c. 244, § 17B. If made aware that a deficiency liability was impending, a mortgagor could take steps to stimulate bidding at the foreclosure sale or might decide to redeem or buy in the property if liability on the note were in the offing in any event. See *Palumbo* v. *Audette*, 323 Mass. at 560.

What the statute mandates as fair play between a mortgagee and mortgagor suggests a standard of fairness between joint debtors, respectively, and joint sureties, respectively, as to a deficiency liability which may arise following a foreclosure sale. If a joint debtor or joint surety is on notice of potential deficiency liability before a foreclosure, that debtor or surety, if he proposes to invoke against other persons equal in degree of indebtedness the equitable right of contribution, is bound to give those persons reasonable notice so that they may look to their interests and not be confronted, after the fact, by a deficiency or a settlement in which they did not participate. There is an equitable obligation to forward, as it were, the statutory notice to persons to whom the primary obligor expects to look for contribution.

For reasons somewhat different from those stated by him, the Superior Court judge rightly allowed the motion for judgment notwithstanding the verdict.

*Judgment affirmed.*

---

[4] If a guarantor pays the instrument, he has a right of recourse against the primary debtor for the whole of the debt. G. L. c. 106, § 3-415(5).