Toomey, J.
INTRODUCTION
Plaintiff NAB Asset Venture II, L.P. (“NAB”) brought this action alleging that defendant William Amorello (“Amorello”) is liable for monies owed under a Limited Guaranty executed by Amorello to NAB’s predecessor in interest, Bank of New England-Worcester County, in connection with a loan and promissory note executed and delivered by the principal obligor T. Amorello, Inc. NAB has moved for summary judgment pursuant to Mass.R.Civ.P. 56(c). Amorello opposes the motion and contends that there are genuine issues of material fact regarding whether NAB’s predecessor in interest’s actions should estop NAB from recovering. For the following reasons, NAB’s motion is ALLOWED.
BACKGROUND
For the purposes of this motion, the court will view the facts in the light most favorable to the nonmoving party, here the defendant, William Amorello.
On November 18, 1987 T. Amorello, Inc. executed a promissory note to Bank of New England-Worcester County, N.A. (“BNE") in the original principal amount of $334,061.01. As additional security for this loan and note, Amorello executed a Limited Guaranty to BNE dated November 19, 1987 which provided that Amorello would guaranty the obligations of his son’s business, T. Amorello, Inc. to a maximum amount of $112,000.00. The Limited Guaranty provided the following:
This Guaranty is secured by a mortgage covering real estate in Oxford, Massachusetts to be recorded with the Worcester District Registry of Deeds.
The real estate referenced in the Limited Guaranty consisted of property that Amorello owned at 11 Wellington Road, Oxford, Massachusetts (“Oxford property”). On the same day he signed the Limited Guaranty, Amorello executed a mortgage on the Oxford property securing his obligation under the Limited Guaranty. In 1988, the Oxford property, which consisted of approximately 6 acres of commercial real estate, was appraised at $380,000.00.
In early 1989, Amorello requested that BNE discharge his Limited Guaranty in exchange for his deeding the Oxford property to his son and permitting BNE to obtain a new mortgage on that property to secure his son’s unlimited guaranty of T. Amorello, Inc.’s obligations. Amorello alleges that BNE orally agreed to this proposal. On September 21, 1984, Amorello executed-a deed granting the Oxford property to his son, Thomas P. Amorello, which was recorded on April 13, 1989 at the Worcester County Registry of Deeds. On June 5, 1989, Thomas P. Amorello provided BNE with a mortgage on the Oxford property. BNE imposed an additional condition for the release of Amorello’s Limited Guaranty requiring that T. Amorello, Inc. remain current on its obligations to BNE during a 90 day preference period, which would end on September 11, 1989.
By letter dated September 15, 1989, BNE notified T. Amorello, Inc. that it was in arrears on its obligations under the promissory note and that BNE intended to commence foreclosure proceedings against the Oxford property. By letter dated January 22, 1990, after BNE initiated foreclosure proceedings, BNE’s counsel identified a problem with the legal description of the property and requested that T. Amorello, Inc. and Amorello execute a confirmatory mortgage and confirmatory deed, respectively. The letter stated that if such instruments were executed then “(p)erhaps then we can complete the paperwork necessary for the release of William from his guaranty.”
On February 5, 1990, Amorello sent BNE copies of the executed confirmatory mortgage and confirmatory deed. Amorello’s counsel requested BNE’s counsel to forward the documents which would release Amorello from personal liability. Amorello did not receive any such documents and had no further communications with BNE.
On January 6, 1991, the Comptroller of Currency, pursuant to the provisions set forth in 12 U.S.C. §1821(c) (2) declared BNE insolvent and appointed the Federal Deposit Insurance Corporation (“FDIC”) as the receiver of the failed institution. Pursuant to 12 U.S.C. §1821(n), the FDIC appointed the New Bank of New England, N.A. as the “bridge” bank.
On March 13, 1991, the bridge bank conducted a mortgage foreclosure sale of the Oxford property. The high and successful bid at the sale was in the amount of $72,000.00.
On July 11, 1991, the FDIC dissolved the bridge bank pursuant to 12 U.S.C. §1821(n)(12). On July 12, 1991, the FDIC was appointed Receiver of the bridge bank’s assets and liabilities.
On May 15, 1993, NAB purchased the promissory note, the loan evidenced by the promissory note, and the guaranties related thereto from the FDIC. According to FDIC records, as of March 15, 1993, the balance due upon the promissory note and loan was in the amount of $368,631.56, consisting of principal of $237,040.51 and accrued and unpaid interest of $131,591.05. Amorello has not made any payments pursuant to his Limited Guaranty. NAB contends that it is entitled to judgment as a matter of law pursuant *693 to the D’Oench, Duhme doctrine and 12 U.S.C. § 1823(e). In opposition to this motion, Amorello claims several affirmative defenses including waiver, accord and satisfaction, and estoppel which allegedly raise factual disputes sufficient to overcome summary judgment.
STANDARD OF REVIEW
Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.R 56(c). The existence of disputed facts is consequential only if those facts have a material bearing on the disposition of the case Norwood v. Adams-Russell Co., 401 Mass. 677, 683 (1988). A party in a civil action moving for summary judgment on a claim on which the opposing party will have the burden of proof at trial is entitled to summary judgment if the moving party demonstrates, by reference to the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “(T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” Lalonde v. Eissner, 405 Mass. 207, 209 (1989). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion for summary judgment.” Pederson v. Time, Inc. 404 Mass. 14, 17 (1989).
DISCUSSION
The FDIC claims that it is entitled to judgment as a matter of law, because there is no dispute that Amorello signed a personal guaranty and that the loan at issue is in default. In response, Amorello argues that BNE agreed to release him from the Limited Guaranty if he conveyed his Oxford property to his son, who would provide BNE with a mortgage on the property. Amorello argues that BNE later agreed to relieve him from liability if he and his son’s business executed a confirmatory deed and confirmatory mortgage. Amorello claims he deeded his property to his son and executed the requested confirmatory deed in reliance upon BNE’s written assurances.
As evidence of this agreement, Amorello offered to the court a letter, dated January 22, 1990, from BNE’s counsel to Amorello’s counsel requesting that the enclosed confirmatory mortgage and deed be signed so that “(p]erhaps then we can complete the paperwork necessary for the release of William from his guaranty.” Amorello also suggested that the agreement is evidenced by numerous BNE Watched Asset Reports, to wit, report, dated July 31, 1989, stating “William to be released from his personal guaranty at end of 90 day preference period . . . provided that no default occurs during preference period” and reports, dated April 30, 1990 and July 31, 1990, listing only Thomas Amorello, Jennifer Amorello and T&W Enterprises, Inc. as guarantors.
In response, NAB argues that BNE did not release Amorello from the Limited Guaranty and that, as to any assignee of the FDIC, such evidence of an agreement is precluded by the D’Oench, Duhme doctrine.
The D’Oench, Duhme doctrine, first expressed in D’Oench, Duhme & Co. v. The Federal Deposit Insurance Corp., 315 U.S. 447 (1942), and later codified in 12 U.S.C. §1823(e) (1994), represents a federal policy to protect the FDIC from any secret arrangements or agreements between a guarantor and a failed bank which may result in the FDIC’s incorrectly assessing the value of the bank’s assets. D’Oench, Duhme operates to “bar [ ] all defenses and affirmative claims whether cloaked in terms of contract or tort, as long as those claims arise out of an alleged secret agreement.” Timberland Design, Inc. v. First Serv. Bank for Sav., 932 F.2d 46, 50 (1st Cir. 1991).
Amorello argues that NAB, as an assignee of the FDIC, is not entitled to the protections afforded under D’Oench, Duhme. This court disagrees. Courts have extended the D’Oench, Duhme doctrine to private assignees of the FDIC, reasoning that if, borrowers could assert an oral side agreement as a defense to a claim or an unrecorded side agreement, that would diminish the value of an instrument acquired by the assignee, purchasers would be less willing to acquire assets from the FDIC. F.D.I.C v. Bledsoe, 989 F.2d 805, 810-11 (5th Cir. 1993); see Bell & Murphy & Assocs., Inc. v. Interfirst Bank Gateway, N.A., 894 F.2d 750, 754 (5th Cir. 1990), cert. denied, 498 U.S. 895 (assignees of federal insurers are also entitled to immunity under D’Oench, Duhme doctrine). Furthermore, extension of the D’Oench, Duhme doctrine to assignees of the FDIC is consistent with the common law rule than “an assignee of contract rights stands in the shoes of the assignor and has no greater rights against the debtor than the assignor had.” Quincy Trust Co. v. Pembroke, 346 Mass. 730, 732 (1964); see also F.D.I.C. v. Bledsoe, supra at 810.
The purpose of the D’Oench, Duhme doctrine is “to protect depositors and creditors of a failed bank who cannot protect themselves, over a borrower who can.” F.D.I.C. v. Greenberg, 851 F.Supp. 15, 21 (D. Mass. 1994) (emphasis in original) (citing Timberland Design, Inc., supra at 48). A borrower, who enters into a special arrangement with a bank, has the ability to protect himself by memorializing the terms of the agreement in writing, and thus must suffer the risk of loss if he fails to do so. Id. An agreement between a bank and a borrower is only binding on the FDIC or its assignees where (1) the agreement is in writing; (2) the agreement was executed by the bank and the borrower contemporaneously with the note that is evidence of the borrower’s debt; (3) the agreement was approved by *694 the board of directors of the bank; and (4) the agreement has continuously been part of the official bank records. Federico v. Brockton Credit Union, 39 Mass.App.Ct. 57, 57-58 (1995), rev. denied, 421 Mass. at 1103.
It is undisputed by the parties that there is no written instrument releasing Amorello from the Limited Guaranty. The documents relied upon by Amorello merely indicate the possibility of releasing him from the Limited Guaranty, but nothing more. The Watched Asset Reports, omitting Amorello’s name from the list of guarantors, are also insufficient to constitute a written release of liability. Moreover, even if BNE had orally agreed to release Amorello from the Limited Guaranty, NAB is protected under the D’Oench, Duhme doctrine, and need not honor any oral agreements which do not comply with the requirements of 12 U.S.C. §1823(e).[1]
Amorello contends that even if the D’Oench, Duhme doctrine applies, NAB’s claim should be barred because he never received notice of BNE’s intention to foreclose on the Oxford Property. He cites, in support, G.L.c. 244, §17B, which provides:
No action for a deficiency shall be brought ... by the holder of a mortgage note or other obligation secured by mortgage of real estate after a foreclosure sale by him . . . unless a notice in writing of the mortgagee’s intention to foreclose the mortgage has been mailed ... to the defendant sought to be charged with the deficiency at his last address then known to the mortgagee, together with a warning of liability for the deficiency . . .
NAB admits that no notice of intent to foreclose was sent to Amorello. Additionally, it is undisputed that after applying the $72,000.00 foreclosure sale proceeds to the monies owed on the note, a deficiency in excess of $112,000.00 remained on the loan obligation.
The controlling issue before this court is whether Amorello, as a guarantor of the promissory note, is entitled to notice as a “defendant sought to be charged with the deficiency” pursuant to G.L.c. 244, §17B. The Massachusetts Appeals Court has addressed this issue and held that “(t]here is no statutory obligation on the part of a foreclosing mortgagee to notify guarantors because the liability of a guarantor does not flow from an ‘obligation secured by a mortgage of real estate’ but is independent of that obligation.” Seronick v. Levy, Schonfeld, 26 Mass.App.Ct. 367, 372 (1988), rev. denied, 403 Mass. at 1104 (quoting Senior Corp. v. Perine, 16 Mass.App.Ct. 967, 968 (1983), rev. denied, 390 Mass. at 1103 (guarantor not entitled to notice where his obligation did not arise from mortgage and was not contingent upon results of the foreclosure)).
Amorello contends that the facts of the instant case are distinguishable from Seronick because his Limited Guaranty was secured by a mortgage on the Oxford property. Additionally, Amorello relies upon a more recent decision, IAG Federal Credit Union v. Laterman, 40 Mass.App.Ct. 116, 117-19 (1996), for the proposition that persons whose obligations are secured by a mortgage are entitled to notice under G.L c. 244, § 17B. The Court in LAG reasoned that the objectives behind the requisite notice in §17B could only be achieved “if notice is given not only to the mortgagors of record of the subject property but also to those signatories of the note secured by the mortgage who may be liable in case of a deficiency in the proceeds from the sale.” Id. at 117. IAG is, however, not controlling at bar because the mortgage securing the Limited Guaranty was not the mortgage that was foreclosed and thus Amorello's obligation did not stem directly from the mortgage.
Furthermore, upon his deeding the Oxford property to his son, Amorello’s Limited Guarantee, although no longer secured, still remained in effect. The pertinent provisions of the Limited Guarantee are as follows:
This Guaranty is an absolute, unconditional and continuing guaranty of the full and punctual payment and performance by the Borrower of the Obligations and not of their collectibility only and is in no way conditioned upon any requirement that the Bank first attempt to collect any of the Obligations from the Borrower or resort to any security or other means of obtaining payment of any of the Obligations which the Bank now has or may acquire after the date hereof, or upon any other contingency whatsoever.
Thus, this court concludes that Amorello’s individual obligation arises solely from his contract of guaranty, the independence of which is apparent from its provisions. See F.D.I.C. v. Henry, 818 F.Supp. 452, 455-56 (D. Mass. 1993).
ORDER
For the foregoing reasons it is hereby ORDERED that plaintiff, NAB Asset Venture II, LP.’s motion for summary judgment is ALLOWED. The defendant, William Amorello must, within 30 days upon receiving this order, transfer $112,000.00 to NAB pursuant to his Limited Guaranty.

The text of 12 U.S.C. §1823(e) provides:
No agreement which tends to diminish or defeat the right, title or interest of the [FDIC] in any asset acquired by it under this section or Section 1821 of this title, either as security for a loan or by purchase as a receiver of any insured depository institution shall be valid against the [FDIC] unless such agreement (1) is in writing, (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, (3) was approved by the board of directors of the depository institution or its loan committee . . ., and (4) has been, continuously, from the time of its execution, an official record of the depository institution.