JER SKW Services, Inc. *vs.* Richard A. Gold & others.[1]

No. 96-P-995.

Suffolk. February 5, 1997. - February 3, 1998.

Present: Armstrong, Gillerman, & Lenk, JJ.

Further appellate review granted, 427 Mass. 1105 (1998).

*Guaranty. Debt. Negotiable Instruments,* Note. *Mortgage,* Real estate. *Partnership,* Limited partnership. *Practice, Civil,* Summary judgment. *Notice,* Foreclosure of mortgage.

Discussion of the nature of liability upon default of a maker of a promissory note, distinguished from the separate liability of a guarantor of the same note. [246-247]

In an action on a note in default, brought against its guarantors who were also the makers, this court held that the plaintiff could not avoid the notice requirements of G. L. c 244, § 17B, in circumstances in which the guaranties did not enlarge the scope of the makers' primary liability [247-250]; where the sufficiency of the notice given was material and remained in issue, summary judgment was not appropriate [250-251]. Gillerman, J., dissenting, was of the opinion that the plaintiff was entitled to summary judgment on its claim against the guarantors.

In a civil action, the judge correctly denied a defendant's motion to dismiss the plaintiff's appeal, where he ruled that any error of the plaintiff in docketing the appeal was the result of excusable neglect. [251]

Civil action commenced in the Superior Court Department on June 15, 1994.

The case was heard by *Gordon L. Doerfer,* J., on a motion for summary judgment.

*Jeffrey R. Cohen* for the plaintiff.

*Robert J. Mailloux, Jr.,* for Jonah Jacob.

Lenk, J. This matter is before us on the appeal of plaintiff, JER SKW Services, Inc. (JER), general partner of SKW Real Estate Limited Partnership (SKW), from a judgment of dismissal entered on April 11, 1995, pursuant to the allowance of sum-

[1]Richard T. Oshana and Jonah Jacob.

mary judgment in favor of the defendants, Richard A. Gold,[2] Richard T. Oshana, and Jonah Jacob. The plaintiff appeals from the dismissal of its complaint, and the defendant Jonah Jacob[3] cross-appeals from the denial of his motion to dismiss the plaintiff's appeal.

*Background.* On September 17, 1991, defendants Jacob, Oshana, and Gold executed and delivered to Shawmut Bank, N.A. (Shawmut), two promissory notes, in the amounts of $791,590.40 and $1,050,000.00, in their capacities as general partners of Northeast Glen Limited Partnership (limited partnership). To secure this debt, the limited partnership granted a mortgage upon Forest Glen Apartments in Westfield to Shawmut. At the same time, in their individual capacities, Jacob, Oshana, and Gold executed and delivered to Shawmut guaranties reaffirming their obligation to pay all of the limited partnership's debts. SKW subsequently purchased from Shawmut the guaranties, notes, and all related mortgage loan documents. The limited partnership defaulted on its obligations under the note and mortgage by failing to pay the principal as due on the note and real estate taxes on the mortgaged property and by voluntarily filing a chapter 11 bankruptcy petition on May 24, 1994. On April 1, 1994, SKW assigned its interest in the mortgage to State Street Bank and Trust Company (State Street).

On June 15, 1994, State Street filed a complaint in Superior Court alleging that the limited partnership had made, and later defaulted upon, the two promissory notes and that the individual defendants were liable in their capacities as guarantors of the limited partnership's obligations for the "full amount of the mortgage due." State Street, through SKW, had twice made demand upon the defendants for the amounts due under the notes before filing suit, but the defendants failed and refused to make payment. On December 16, 1994, SKW held a foreclosure sale and sold the property for $1,606,000.

State Street filed a motion to substitute SKW as plaintiff in

---

[2]After defendant Gold failed to answer, a default was entered against him; no default judgment followed.

[3]Neither defendant Gold nor defendant Oshana moved to dismiss the appeal or filed a cross appeal. Defendant Jacob filed a brief on appeal; defendants Oshana and Gold adopted his arguments.

this action[4] and also moved for summary judgment. SKW was substituted as plaintiff on January 17, 1995, and, after hearing oral argument, the motion judge entered summary judgment against the plaintiff and for the defendants, the nonmoving parties. He determined that the defendants' liability as makers on the notes, in their capacities as general partners of the limited partnership, is exactly the same as the defendants' liability as individual guarantors. He ruled both that the guaranties of the defendants are mere surplusage and that State Street should have sued the defendants directly on the promissory notes. He also concluded that the initiation of suit on the guaranties was undertaken, in part, to avoid the notice requirement of G. L. c. 244, § 17B, see note 8, *infra*. A judgment dismissing the complaint was entered on April 11, 1995.

SKW filed a motion for reconsideration on May 8, 1995, and a notice of appeal on May 9, 1995. In support of the motion for reconsideration, SKW submitted an affidavit and attachments to show that notice had been sent to each of the three defendants by certified mail, return receipt requested. The notices sent to Gold and Oshana were returned "unclaimed." Notices were sent to both defendant Jacob and his attorney; there appears to be a receipt from Jacob's attorney, but none from Jacob himself. The trial court did not rule on SKW's motion for reconsideration.

Due to the appearance of new counsel, SKW was unaware that the court had originally assembled the record on June 13, 1995, and, consequently, did not promptly pay the docket fee. Defendant Jacob filed a motion to dismiss the appeal on May 9, 1996, which a different motion judge denied on June 11, 1996, finding excusable neglect on the part of SKW. SKW was granted leave to docket its appeal on June 18, 1996, and on June 19, 1996, the trial court issued a new notice of assembly of record.

SKW contends that it was error to award summary judgment to the defendants. SKW claims that the guaranties executed by the defendants resulted in a liability which is distinguishable from the promissory notes to which they relate, that the guaranties are not merely surplusage, and that the plaintiff may sue on

---

[4]SKW had assigned its interest in the mortgage to State Street on April 1, 1994. SKW, however, remained the holder of the promissory notes, the guaranties, and the related documents. Accordingly, State Street served a motion to substitute SKW as plaintiff, as SKW is the real party in interest in this action to recover on the guaranties.

them. SKW also claims that the motion judge's finding that SKW sought to circumvent the notice requirements of G. L. c. 244, § 17B, by suing on the guaranties rather than on the notes, was neither correct nor relevant.

*Discussion.* Generally, a guarantor is liable for the full amount of the borrower's debt according to the terms of the guaranty. *Shawmut Bank, N.A.* v. *Wayman*, 34 Mass. App. Ct. 20, 23 (1993). When the person primarily liable for the debt, typically the maker, also agrees to guarantee payment, however, this additional guarantor liability is surplusage insofar as it neither subtracts from nor adds to the liability of the primary party. "If one is primarily liable as a maker, jointly and severally, it adds nothing to say one is liable all over again, and, in general, 'when a maker also signs a note as guarantor, the guaranty is surplusage.' " *Seronick* v. *Levy*, 26 Mass. App. Ct. 367, 371 (1988), quoting from *Ligran, Inc.* v. *Medlawtel, Inc.*, 86 N.J. 583, 589 (1981). The guaranty merely duplicates the already existing liability of the primary party.

Still, there are situations where a maker can also sign on as a guarantor and thereby expand his liability. Where a guarantor is the same person as the maker, he may sign in different capacities when signing as maker and guarantor.[5] *Ligran, Inc.* v. *Medlawtel, Inc.*, 86 N.J. 583, 589 (1981). Alternatively, where the maker and the guarantor are the same person, the guarantor could pledge some additional collateral to guarantee the debt. See *Federal Deposit Ins. Corp.* v. *Singh*, 977 F.2d 18 (1st Cir. 1992) (hereinafter *Singh*). Indeed, SKW relies upon *Singh* to argue that there is a distinction between the defendants' liability on the guaranties and their liability on the promissory notes. In *Singh*, the partners in a general partnership incurred separate and distinct liability in their capacities as makers and guarantors because of a nonrecourse provision in the note preventing the bank from looking to the personal assets of the partners for satisfaction of the obligation of the partnership. *Id.* at 25. The partners also signed a guaranty promising to deliver additional

---

[5]Here, the defendants signed the promissory notes as general partners of the limited partnership and signed the guaranties as individual guarantors. Under the facts of this case, however, the defendants have not signed "in different capacities."

collateral from personal assets.[6] *Ibid.* In analogizing to *Singh*, SKW argues that the guaranties here are significantly broader than the notes because they expose the defendants to liability both for the amounts due on the promissory notes as well as for any future advances made to the partnership. SKW also contends that the written guaranties enlarge the scope of the defendants' liability by altering the conditions, pursuant to G. L. c. 244, § 17B, under which they could be held liable for a deficiency. These contentions are unpersuasive.

To be sure, the defendants' written guaranties of the debts of the limited partnership could potentially enlarge the scope of the defendants' liability by exposing them to liability for any future advances made to the limited partnership as well as for the amounts due on the notes. However, the key consideration is whether the defendants' liability was actually enlarged. It was not, since no other advances were in fact made to the limited partnership. The defendants' actual liability remains identical with respect to the notes and the guaranties.

Nor, unlike *Singh*, do the defendants' written guaranties obligate them to deliver any additional collateral for the debts. Here, the defendants are jointly and severally liable for the entire amount of the notes in their capacities as general partners of the limited partnership. In signing the notes as general partners of the limited partnership, the defendants obligated the assets of the limited partnership as well as any personal assets they may have as collateral for the debts. See G. L. c. 109, § 24; *Fusco* v. *Rocky Mountain I Invs. Ltd. Partnership*, 42 Mass. App. Ct. 441, 447-448 (1997) (general partners of a limited partnership are personally liable for the debts of the limited partnership). In executing the written guaranties, the defendants became jointly and severally liable for the amount of the notes under the terms of the guaranties as well. The defendants once again committed all of their own assets as

---

[6]The dissent asserts that, because the guaranty in *Singh* was not bounded by the terms of the note, the Court of Appeals for the First Circuit concluded the guaranty was "not surplusage by any stretch of the imagination." *Singh* at 25. This view of *Singh* is incomplete and ignores the critical fact that the *Singh* guaranty provided supplementary and otherwise unavailable collateral. Otherwise put, it was both the fact that the guaranty was not bounded by the terms of any specific note and the fact that the guaranty, unlike the note, obligated the guarantors to deliver additional collateral that together created liability on the *Singh* guaranty which was separate and distinct from the defendants' liability on the note. *Ibid.*

security for the debts. The defendants' attempt collaterally to guarantee their own unlimited obligation on the promissory notes essentially duplicates their liability under the notes, under which they were already primarily and directly liable for the entire obligation. See *Riddle* v. *Lushing*, 203 Cal. App. 2d 831, 834 (1962) (where defendants purchased real property as a general partnership and guaranteed payment as individuals, "[s]ince [they] were already primary obligors, both jointly and severally, they could not also be sureties or guarantors on the partnership note. The purported guaranty added nothing to the · primary liability which arose when they as partners executed the note in the name of the partnership"); *Rock Island Bank & Trust Co.* v. *Stauduhar*, 59 Ill. App. 3d 892, 901 (1978) (where guarantor signed note as one of two makers, guarantee of debt by comaker essentially surplusage).

SKW also argues that the written guaranties enlarge the scope of the defendants' liability by altering the conditions under which they could be held liable for a deficiency.[7] A statutory notice requirement is imposed as a prerequisite for seeking and obtaining a deficiency judgment against the maker of an obligation secured by mortgage of real estate, while no such obligation is imposed with respect to pursuing a deficiency judgment against a guarantor. G. L. c. 244, § 17B.[8] Thus, SKW contends, the guaranties here allow the creditor to pursue a deficiency

---

[7]SKW apparently operated under the mistaken belief that, as a result of the automatic stay of litigation against the debtor imposed by the bankruptcy laws, it was precluded from initiating proceedings on the notes not only against the limited partnership, but also against the defendants, in their capacities as general partners. Were this the case, the guaranties would operate to broaden the scope of the defendants' liability. See *Allegheny Intl. Credit Corp.* v. *Bio-Energy of Lincoln, Inc.*, 21 Mass. App. Ct. 155, 158 (1985) (arm of bankruptcy judge does not stretch out to protect guarantor); *Pemstein* v. *Stimpson*, 36 Mass. App. Ct. 283, 293 (1994) (guarantors still liable on entire original primary debt, notwithstanding debtor's chapter 11 petition). However, the automatic stay provisions of 11 U.S.C. § 362(a) (1994) apply only to actions against the debtor-partnership and do not apply to actions against the general partners of the debtor. See *In re Aboussie Bros. Constr. Co.*, 8 B.R. 302 (D.E.D. Mo. 1981); *In re Bank Center, Ltd.*, 15 B.R. 64 (Bankr. W.D. Pa. 1981). Thus, the defendants' liability on the guaranties is no different than their liability on the notes and the automatic stay did not, in fact, preclude SKW from suing the defendants on the notes.

[8]"No action for a deficiency shall be brought . . . by the holder of a mortgage note or other obligation secured by mortgage of real estate after a foreclosure sale by him . . . unless a notice in writing of the mortgagee's intention to foreclose the mortgage has been mailed, postage prepaid, by

judgment without complying with the requirements of § 17B and therefore result in a liability which is distinguishable from the liability on the promissory notes to which they relate.

This argument is flawed insofar as it assumes that SKW may, in bringing suit on the guaranties rather than on the notes, avoid the statutory notice requirements and arguably expand the scope of liability under the guaranties. In the very limited circumstances here, where the defendants are primarily liable for the debt as makers of the notes and their guaranties substantively do no more than duplicate this already existing liability, suit may only be brought subject to the statutory notice requirements, regardless of whether it is brought on the notes or on the guaranties.

The duty to warn of potential deficiency liability pertains to the defendant sought to be charged with the deficiency. G. L. c. 244, § 17B. Considerations of fairness underlie the statutory notice required by G. L. c. 244, § 17B, requiring reasonable notice to persons primarily liable on a mortgage note so that they may look out for their interests and not be confronted after the fact by a deficiency or a settlement in which they did not participate. *Seronick* v. *Levy*, *supra* at 372. See *IAG Fed. Credit Union* v. *Laterman*, 40 Mass. App. Ct. 116, 117 (1996). The dissent's reliance on *Senior Corp.* v. *Perine*, 16 Mass. App. Ct. 967 (1983), does not persuade us otherwise. The difference between *Senior Corp.* v. *Perine*, *supra*, and the case at bar, which the dissent minimizes but is in fact critical, is that here the makers and guarantors are the very same individuals with identical financial liability. The public policy considerations served by § 17B could be entirely thwarted in such circumstances were the dissenting view to prevail, for mortgage lenders could thereafter demand that mortgagors sign not only a note, but also an "independent" guaranty of the obligation. Upon default and a deficiency, the mortgagee could pursue a deficiency judgment on the guaranty, bypassing entirely the § 17B notice requirements and thereby undermining the legislative intent that persons so situated may look out for their interests and participate in the foreclosure proceedings.

This brings us to the question whether the guaranties are enforceable. In certain situations where a guaranty is surplusage, the effect may be to render it unenforceable. Some jurisdic-

registered mail with return receipt requested, to the defendant sought to be charged with the deficiency. . . ." Inserted by St. 1945, c. 604, § 1.

tions, for example, prohibit or limit deficiency judgments following foreclosure and courts in those jurisdictions accordingly will not permit postforeclosure deficiency judgments against guarantors who were also makers. *Valinda Builders, Inc.* v. *Bissner*, 230 Cal. App. 2d 106, 111 (1964); *Union Bank* v. *Dorn*, 254 Cal. App. 2d 157, 159 (1967). See *First Interstate Bank* v. *Larson*, 475 N.W.2d 538, 542-544 (N.D. 1991). Elsewhere, the law may deny effect to a "guaranty" for one's own debts. See, e.g., *Citizens Bank & Trust Co. of Wash.* v. *Gibson*, 463 N.E.2d 276, 278 n.1 (Ind. Ct. App. 1984). Massachusetts, however, has no similar stated policies. See G. L. c. 244, § 17B. Accordingly, we are particularly reluctant to strip an otherwise bona fide guaranty of its intended effect. See *Singh, supra* at 25 n.10.

Jacob and Oshana rely upon *Seronick* v. *Levy* to argue that the guaranties at issue are without effect. In *Seronick*, Levy and Schonfeld signed a mortgage note payable to Seronick both as comakers and coguarantors. Seronick gave Levy, but not Schonfeld, notice, under G. L. c. 244, § 17B, of impending foreclosure proceedings, with a warning that he would hold Levy liable for any deficiency. *Id.* at 368. Levy settled with Seronick for $40,000 and then turned to Schonfeld for $20,000 in contribution as a coguarantor. We held that Schonfeld could not, in the circumstances of that case, be liable in her capacity as coguarantor to make contribution to Levy for the deficiency on their mortgage note, where she was already jointly and severally liable for the debt as maker. *Id.* at 371. Under the facts of that case, the guaranty was without effect. In *Seronick*, Levy as comaker had already settled the debt to Seronick without first notifying Schonfeld as comaker, thereby extinguishing the obligation of any guarantor, including Schonfeld. *Id.* at 373. See also Restatement (Third) of Suretyship and Guaranty § 19(a) (1996). Seronick thus could not sue Schonfeld on the guaranty for contribution any more than he could on the note. This is quite unlike the case now before us. In suing the defendants on the guaranties, it would seem that SKW puts them in no different position than if SKW had proceeded on the notes.

The plaintiff's materials pertaining to the issue of notice under G. L. c. 244, § 17B, were submitted in support of the plaintiff's motion for reconsideration *after* the judge had ruled on the summary judgment motion. The judge did not rule on the reconsideration motion. The issue of the sufficiency of notice of the plaintiff's intention to seek a deficiency judgment is both

material and unresolved.[9] See *Mutual Bank for Sav.* v. *Silverman*, 13 Mass. App. Ct. 1059, 1060-1061 (1982). Additional issues may be presented as the case proceeds. Therefore, while the judge erred in entering summary judgment for the defendants, he was correct to deny the plaintiff's motion for summary judgment on the record then before him.

Jacob has filed a cross appeal arguing that the motion judge erred in denying his motion to dismiss SKW's appeal. We see no merit in this claim. We affirm the motion judge's ruling that any error on the part of the appellant was the result of excusable neglect. See *Mailer* v. *Mailer*, 387 Mass. 401, 405 (1982).

*Judgment reversed.*

*Order denying motion to dismiss appeal affirmed.*

GILLERMAN, J. (dissenting). In my view, notice is not an issue in this case; I would order summary judgment for the plaintiff.

Section 17B precludes an action for a deficiency on an *"obligation secured by mortgage of real estate"* unless the required notice is sent to the person to be charged for the deficiency (emphasis added). That section also sets forth the form of notice. The notice must state the mortgagee's intention to foreclose the mortgage on property which "secure[s] *a note* (or other obligation) *signed by you, for the whole, or part, of which you may be liable to me in case of a deficiency* in the proceeds of the foreclosure sale" (emphasis added). It is the mortgage note, *signed* by the person to be charged for any deficiency, which identifies the person to whom notice must be given. Additional makers of the note — but who are not also mortgagors of record — are entitled to notice, failing which they cannot be held liable. See, e.g., *IAG Fed. Credit Union* v. *Laterman*, 40 Mass. App. Ct. 116, 117 (1996).

Thus we have held that where the defendant signed a guaranty

---

[9]At oral argument, after contending that the issue of notice was irrelevant and that, in any event, appropriate notice had been given, counsel for the plaintiff alternatively argued that "if the concern that the court has voiced [about notice] is an overriding concern, I would respectfully suggest that the case be remanded to the lower court for a determination as to the facts surrounding the notice."

promising to pay up to $1,000,000 upon any default in the payment of principal and interest *on a mortgage note signed by another*, the plaintiff's failure to comply with the notice provisions of § 17B did not bar the plaintiff's recovery. We reasoned that the action was based on "a separate personal obligation on the part of the defendant. . . . [H]is obligations [did not] arise from the mortgage. They stem from the contract of guaranty, the independence of which is apparent from its provisions. . . ."[1] *Senior Corp.* v. *Perine*, 16 Mass. App. Ct. 967, 967 (1983). We also stated that the guaranty was "not an 'obligation secured by a mortgage' " and that the legislative history of § 17B supported our conclusion.

It is true that, in *Senior Corp.* v. *Perine, supra*, the maker of the mortgage note and the guarantor were not the same person, but that is a difference without a distinction, for the guaranty in that case was limited to assuring payment *only* of the mortgage note (up to a stipulated amount).

Here, the guaranties make no mention of the note and are separate documents. Each *"unconditionally* guarantee[s]" (emphasis added) the full and prompt payment at maturity of *all* present and future obligations of the general partners of the limited partnership. Upon any default of the general partners, the liability of the guarantors "shall be effective immediately, without demand, presentment, protest *or notice of any kind, all of which are hereby waived . . . and without further steps to be taken or further conditions to be performed by Holder or anyone*" (emphasis added).

Such was the unconditional obligation of the defendants, and I know of no reason why they should be relieved of that obligation. The majority assert that the defendants' liability was not "actually enlarged" by their guaranties (and thus were mere "duplicates" of the note) and make that fact decisive. But it is not a fact. To be sure, the liability of the defendants as makers of the note was made conditional upon the fulfillment of the required notice described in G. L. c. 244, § 17B. But a guaranty is different; it is an *unconditional* commitment which does not arise out of a note secured by a mortgage, and that undertaking is not governed by § 17B either as a matter of public policy or of statutory interpretation. As the Court of Appeals for the First

---

[1]Certain provisions of the guaranty are set out in note 2 to our opinion in *Senior Corp.* v. *Perine*, 16 Mass. App. Ct. 967 (1983). Those provisions are similar to the guaranties in this case.

Circuit points out in *Federal Deposit Ins. Corp.* v. *Singh,* 977 F.2d 18, 25 n.10 (1st Cir. 1992), certain States have enacted statutes that prohibit or limit deficiency judgments after foreclosure, and that policy is understandably enforced where makers are also guarantors. But Massachusetts, the court said, "has no such policy," citing c. 244, § 17B.

That interpretation of Massachusetts law is correct. Section 17B protects the makers of mortgage notes who have assumed the "statutory obligations," see G. L. c. 183, § 20 (mortgagors are liable for any unpaid balances due on the mortgage note); it assures them of notice of any foreclosure sale. But where the lender and the borrower separately agree that the borrower will be liable, in any event, for any unpaid balances then or thereafter due the lender, § 17B does not impose the obligation of notice, and there is nothing in the wording of the statute that could bring one to the opposite conclusion.

The court in *Singh* was confronted with the same argument advanced here — that the guaranty is mere surplusage because the maker of the mortgage note is the same person as the guarantor. The court dismissed that argument: "The Guaranty does not refer to the repayment of any specific liability in any specific time period, but rather was clearly meant to secure *any* liability running from [the borrower] to the bank. Stated another way, the obligation undertaken under the Guaranty is not bounded by the term of the 1987 Note — or any specific note, for that matter . . . . [T]he Guaranty is not surplusage by any stretch of the most active imagination." *Id.* at 25. In these circumstances the court concluded that the maker-guarantor "incurred liability in two separate and distinct capacities." *Id.* at 22. The reasoning of *Singh* is fully applicable to this case.[2]

Judgment for the plaintiff should be entered on its motion for summary judgment.

---

[2]*Seronick* v. *Levy,* 26 Mass. App. Ct. 367 (1988), does not stand for any proposition contrary to what I urge here. That case deals with the equitable obligations between coguarantors; we held that where one coguarantor is on notice of a potential deficiency which may arise after foreclosure, he has the *equitable* obligation to notify his coguarantor.