Merrick, P.J.
This is an action in contract against the guarantor to recover payment for gasoline sold and delivered by the plaintiff’s assignor and other obligations owed. After trial, judgment was entered for the plaintiff, and the defendant has appealed pursuant to Dist./Mun. Cts. R.A.D.A., Rule 8C.
Defendant Scott F. Gleason (“Gleason”) was a principal and major shareholder of Bradford Shell, Inc. (“BSI”), which owned a gasoline station in Bradford, Massachusetts. In 1990, BSI sold the station to Shell Oil Company (“Shell”), the plaintiff’s assignor. Shell leased the station back to BSI and entered into a contract to sell gasoline to BSI. At the time of this 1990 transaction, Gleason executed an unlimited personal guaranty of all BSI’s obligations, present and future, to Shell. Shell initially demanded C.O.D. payments from BSI for gasoline deliveries. In 1993, Shell upgraded BSI’s credit rating to permit two gasoline deliveries on credit in the total amount of $22,000.00. When timely payments were not made, BSI was again reduced to C.O.D. status.
The gasoline station experienced financial problems. In 1993, with Shell’s assent, BSI assigned its lease and dealer contract to a third party, along with its assets, receivables and inventory. As a condition of that assignment, Shell released *268 its security in the assets of BSI. In 1994, Shell advised defendant-guarantor Gleason that it would look to him for payment both for the two gasoline shipments and for other obligations owed by BSI.
1. It is elementary that a guarantor is bound by the express terms of the guaranty he executes. See generally Jer Skw Serv., Inc. v. Gold, 44 Mass. App. Ct. 243, 246 (1998); Encon Industries, Inc. v. Heritage Distrib., Inc., 1987 Mass. App. Div. 158, 159. The unambiguous language of both BSI’s contract with Shell, which Gleason guaranteed, and the guaranty itself preclude all of the arguments raised by Gleason on this appeal.
2. There is no merit to Gleason’s first contention that Shell’s sale of gasoline to BSI on credit breached his contract of guaranty or so changed it as to amount to a novation. While the credit sales were a departure from Shell’s usual practice of selling gasoline to BSI on a C.O.D. basis, BSI’s dealer contract with Shell provided, in paragraph 8 captioned “Prices - Terms”:
Dealer shall pay Shell for products at the time of delivery by cash, certified or cashier’s check, postal money order, or a combination of the foregoing, as Shell may specify by reasonable advance notice to Dealer, or on such credit or other payment terms as Shell may elect to extend. ... [emphasis supplied].
The two credit sales were thus consonant with the dealer contract guaranteed by Gleason.
3. Contrary to Gleason’s second argument as to discharge, Shell’s release of its security interest at the time of the assignment by BSI to a third party was authorized by the guaranty signed by Gleason. That instrument provided in paragraph 4:
Neither Shell’s release of, nor its failure to proceed against, any other security for any part or all of the indebtedness shall release or otherwise affect Guarantor’s obligations hereunder.
Assuming without deciding that G.L.c. 106, §3-605 applies here, as Gleason asserts, §3-605 (i) provides:
(i) A party is not discharged under this section if (i) the party asserting discharge consents to the event or conduct that is the basis of the discharge, or (ii) the instrument or a separate agreement of the party provides for waiver of discharge under this section either specifically or by general language indicating that parties waive defenses based on suretyship or impairment of collateral.-
It is unnecessary to consider the question of whether Gleason, as a principal of BSI, consented to Shell’s release of its security interest. It is sufficient to note under (ii) that paragraph 4 of Gleason’s guaranty expressly waived any defenses based upon impairment of collateral.
Judgment affirmed. Appeal dismissed.
So ordered.