Williams, P.J.
When he was president of Steinberg Furniture Co., Inc. (“Stein-berg”), defendant Stuart Phillips (“Phillips”) personally guaranteed payment of Steinberg’s promissory note to the First National Bank of Boston (“First National”). The trial judge found Phillips individually liable to First National’s successor, Fleet National Bank (“Fleet”), on that guaranty. Phillips appealed, arguing that the trial judge improperly neglected to address both the issues of Fleet’s failure to prove it was a holder of the note and of Fleet’s failure to establish that there had been a reasonable disposition of the collateral under the note. As the trial judge correctly found, Phillips’s obligations under the guaranty were unconditionally separate from Steinberg’s under the note. We find no error and dismiss the appeal.
In July, 1988, Steinberg, a furniture retailer in Fall River, borrowed $400,000.00 from First National. Fleet is successor in interest to First National. Phillips, Stein-berg’s president, executed a promissory note for Steinberg. The note was secured by a security interest in all of Steinberg’s assets, including inventory and accounts receivable.[1] A few weeks after he executed the note as president of Steinberg, Phillips signed a personal unlimited guaranty agreement, a sealed instrument, for the loan. Phillips thereby promised to pay for all loans, advances, indebtedness, notes, obligations, and amounts at any time owed by Steinberg to First National. The guaranty, among other provisions, provided that it was “an absolute, unconditional and continuing guaranty of the full and punctual payment and performance of the Obligations and not of their collectibility only and [was] in no way conditioned upon any requirement that [First National] first attempt to collect any of the Obligations from [Steinberg] or resort to any security or other means of obtaining their payment.”
Steinberg’s payments on the note ceased in December, 1993. At some point, a snowstorm caused the collapse of the roof of the Steinberg store, damaging the building and inventory. What efforts, if any, were made to collect the insurance recovery are unknown, although First National received no such proceeds. Apparently, also, two Steinberg employees were convicted of embezzling considerable monies from Steinberg. Whether any insurance proceeds were generated as a result of claims for that defalcation is unknown; but, again, First National received no such insurance proceeds.
First National eventually declared a default and in 2003, brought this action against Phillips. Following a bench trial in April, 2005, the trial judge, relying largely on SKW Real Estate Ltd. Partnership v. Gold, 428 Mass. 520 (1998), found, *108 in essence, that Phillips’s guaranty constituted an obligation separate and apart from that of Steinberg’s note. Thus the guaranty was separately enforceable. The judge found further that Fleet’s right to proceed against Phillips was not conditioned upon any requirement that Fleet first seek collection on the note or that it look to any security or other means of obtaining payment. Therefore, Phillips was obligated to pay the unpaid balance on the note. Judgment was entered for Phillips in the amount of $451,323.03, plus interest and costs.
Phillips claims the trial judge erred in two respects: Fleet could not have prevailed because it failed to prove it was the holder of the note, and the trial judge erred in not addressing that argument; secondly, the trial judge incorrectly found that Fleet had no obligation to Phillips to dispose of Steinberg’s collateral in a commercially reasonable manner even though Fleet had failed to meet its burden of proof on that issue. We find neither argument persuasive.
As to the first argument, Phillips stipulated in writing at trial that Fleet was the successor in interest to First National on the note and the guaranty. To urge that Fleet was not the holder of the note or guaranty is disingenuous at best. Unconditional guaranties such as Phillips’s are separate and distinct from such notes as Steinberg’s, and may be enforced without regard to any defenses to the note obligations. SKW Real Estate, supra, at 521; Hurley v. Merowitz, 55 Mass. App. Ct. 920 (2002) (rescript). See also, e.g., JER SKW, Inc. v. Gold, 44 Mass. App. Ct. 243, 246 (1998) (re: distinctness of note and guaranty when signatories not identical); Pemstein v. Stimpson, 36 Mass. App. Ct. 283, 289, 290 (1994) (same). The obligation created by the guaranty is not governed by the terms of the note. SKW Real Estate, supra, at 524. Under such a guaranty, the guarantor (Phillips) assumed an absolute and unconditional obligation to pay the principal’s (Steinberg’s) debts upon its default. Thus, the note is irrelevant to this action. Fleet did not sue on the note between Steinberg and First National, but on the guaranty that Phillips specifically acknowledged having executed. And “ [ijt is elementary that a guarantor is bound by the express terms of the guaranty he executes.” Kaplan and Kaplan, Inc. v. Gleason, 1999 Mass. App. Div. 267, 268.
Similarly, Phillips’s argument that Fleet did not prove that it had disposed of Steinberg’s collateral in a commercially reasonable manner is unavailing. Again, Fleet’s action was on Phillips’s guaranty — a separate and distinct personal obligation — and not on Steinberg’s note. The guaranty specifically provided that it was not conditioned upon any requirement that First National first pursue Steinberg for payment, and further provided that Phillips waived any defenses Steinberg might have had on the note. The disposal-of-collateral defense was included in that waiver and thus was unavailable to Phillips on Fleet’s action on the guaranty. Id.
There being no error, the appeal is dismissed.
So ordered.

 It was further guaranteed by Phillips Realty Corporation, which owned the real estate on which the Steinberg store was located.